ISABELLE EVANS BROMMER, APPELLEE, V. CITY OF HASTINGS, NEBRASKA, APPELLANT.

322 N.W.2d 787

Filed August 6, 1982. No. 43846.

Michael E. Sullivan, for appellant.

Arthur E. Langvardt, for appellee.

Heard before KRIVOSHA, C.J., McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

This is an equity case commenced by Isabelle Evans Brommer, plaintiff and appellee, a landowner in Adams County, Nebraska, seeking a permanent injunction restraining the City of Hastings, Ne-

braska (City), a municipal corporation, defendant and appellant, from discharging water upon her land to the extent that it causes flooding and erosion of the same. In addition, Isabelle Brommer is seeking money damages for injury to her real estate resulting from this flooding.

The trial court entered a decree permanently enjoining the defendant from allowing drainage water to escape from the existing channel crossing the plaintiff's property onto the plaintiff's land to the north of said channel; permanently enjoining the defendant from allowing or causing any further erosion of the northerly bank of said channel; awarding the plaintiff $45,000 as total and permanent damages to the plaintiff's land south of said channel; and granting title to the defendant to that portion of plaintiff's land lying south of said channel, limiting defendant's use thereof to drainage or water control purposes. The defendant appeals.

The defendant asserts, in substance, that the trial court erred: (1) In failing to find that the plaintiff's action was barred by the doctrine of res judicata; (2) In finding that any conduct of the defendant was the cause of the various injuries sustained by the plaintiff due to flooding upon her real estate or to erosion of the channel upon her real estate; (3) In awarding money damages to the plaintiff as total and permanent damages to plaintiff's land south of the channel which crosses plaintiff's land; and (4) In restricting the use defendant can make of the property awarded to the defendant.

It is the duty of this court on appeal of an action in equity to try the issues de novo and to reach an independent conclusion without reference to the findings of the trial court. *Daugherty v. Ashton Feed and Grain Co., Inc.,* 208 Neb. 159, 303 N.W.2d 64 (1981); *Probert v. Grint,* 148 Neb. 666, 28 N.W.2d 548 (1947).

Plaintiff owns a parcel of agricultural real estate of approximately 25 acres located on the east side of

Highway 281 north of Hastings, Nebraska. In approximately 1958 the City constructed the present Lake Hastings dam. The dam was built across and blocked off what has historically been a draw or low area west of Highway 281. Prior to the construction of the dam, rainwater following heavy rains would flow through a depression or dry creek across plaintiff's land. Following the construction of the dam the water followed the same general course through plaintiff's land, with the owners being able to farm all of the land until recent years.

The principal source of water supply for Lake Hastings is the discharge of cooling water into the lake by the Hastings Utilities Department and natural surface waters, i.e., rainfall runoff. Surface waters are derived from an area approximately 8 miles square, known as the Lake Hastings Watershed. Three and one-half of those square miles are the urbanized portion of the City; the remaining $4\frac{1}{2}$ square miles are comprised of farmland.

The dam is designed so that Lake Hastings is full almost all of the time and, therefore, has no reserve capacity. The result is that as the Hastings Utilities Department discharges water into the lake, or any rainfall runoff flows into the lake, equal amounts of water flow over the spillway and eventually cross the plaintiff's land, thus creating a constant flowing stream.

In 1961, following a flooding of her land, the plaintiff sued the City and recovered a judgment in the amount of $1,000.

In recent years there has been steadily increasing residential development around the lake. The defendant has made no effort to control runoff from the developed areas and merely allows it to flow into the lake. The runoff from the developed land comes into the lake at a much faster rate, with the result that there is a greater problem each year as steadily increasing volumes of water come across the plain-

tiff's land, especially during rainfalls. In addition, the constant flow in the channel has caused drastic erosion, with the result that the channel now flows larger and deeper each year.

Water flows in a southeasterly direction across plaintiff's land, then exits south under an east-west road, then sharply left under railroad tracks, then sharply north back under the east-west road. The resulting horseshoe-shaped turn in the channel impedes the flow of water and, in times of rainfall, it banks it up on the plaintiff's land. This has made farming of the land north of the channel difficult at best and has made the planting of new crops useless. The now constantly flowing channel has also totally cut off access to the land south of the channel. These 3½ acres have been rendered totally useless to the plaintiff due to this lack of access and because they have now developed sinkholes.

The defendant has argued that this action is controlled by the doctrine of res judicata because of the 1961 lawsuit between the parties. The prior court file introduced in evidence consists of the pleadings and a judgment. In the second amended petition filed in the 1961 lawsuit, the plaintiff alleged construction of the dam, establishment of the Hastings Utilities Department well field and its drainage into the watershed, continuous flow of water across the plaintiff's land, and permanent damage to the land. The action was tried on the second amended petition and the answer thereto. The earlier petition alleged only crop damage, costs of maintenance of the banks, and access costs to the isolated acreage. The petition in the instant case repeats all those allegations and adds another, i.e., that development in the watershed increases the volume of water received by the plaintiff's land. No allegation is made that water from outside the watershed is introduced into the watershed by the City. The prayer asks for monetary dam-

ages for permanent damage to the land, and an injunction.

Without discussion, we note the rather novel theory of the plaintiff that a city is liable to downstream proprietors for a presumed loss of soil absorption by reason of developments in a watershed. We believe this case is controlled by the doctrine of res judicata.

The scope of the res judicata bar encompasses not only issues actually litigated in the first suit but also those issues which could have been raised in that suit. *Industrial Credit Company v. Berg,* 388 F.2d 835 (8th Cir. 1968).

" ' " 'Any right, fact or matter in issue, and directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject-matter of the two suits is the same or not.' " ' " *Vantage Enterprises, Inc. v. Caldwell,* 196 Neb. 671, 674, 244 N.W.2d 678, 680 (1976).

The causes of action in both the 1961 lawsuit and this one are the same. The plaintiff had the opportunity to sue for an injunction in the first action but decided against it. This was evidenced by the change in the prayers in the amended petitions filed in the 1961 lawsuit. The plaintiff successfully maintained a cause against the City for permanent damage in 1961. The controversy has been litigated and permanent damage has been recovered once. The doctrine of res judicata prevents recovery a second time.

The judgment of the District Court is reversed and the cause dismissed.

REVERSED AND DISMISSED.

CLINTON, J., participating on briefs.