RANDY L. BARTUNEK, APPELLANT, V. GEO. A. HORMEL &
COMPANY, A CORPORATION, APPELLEE.

513 N.W.2d 545

Filed March 1, 1994. No. A-93-436.

William G. Line, of Kerrigan & Line, for appellant.

Jay L. Welch, of Rickerson, Welch, Wulff & Childers, for appellee.

SIEVERS, Chief Judge, and IRWIN and MILLER-LERMAN, Judges.

SIEVERS, Chief Judge.

Randy L. Bartunek brought a declaratory judgment action in the county court for Dodge County against Geo. A. Hormel & Company (Hormel). Bartunek sought a declaratory judgment that Hormel had no subrogation rights in a $45,000 judgment Bartunek recovered against Michael Gentrup in a negligence action in the district court for Cuming County. Hormel was not a party to the action against Gentrup. The county court for Dodge County sustained Bartunek's motion for summary judgment, and Hormel appealed to the district court for Dodge County. The district court reversed the county

court judgment and remanded the matter for further proceedings. Bartunek now appeals the decision of the Dodge County District Court to this court, asking that the decision of the county court be reinstated.

Bartunek was employed at Hormel at the time of an automobile accident in which Bartunek was injured. After the accident, Hormel paid Bartunek $4,808 in disability benefits and $3,992 in medical benefits under its local union contract. Hormel claimed a subrogation interest in Bartunek's $45,000 judgment against Gentrup, the tort-feasor, to the extent of these payments.

When the county court sustained Bartunek's motion for summary judgment, it stated that "[t]he subrogation claim fails because the verdict of the Cuming County District Court upon which the [tort] claim is based was a general verdict. This Court can not determine whether the general verdict covered any of the amounts or subject matter of the subrogation claims." On appeal, the district court reversed the decision of the county court. Bartunek next filed a motion for new trial in the district court, which motion was overruled. That ruling causes us to briefly digress. A motion for new trial is restricted to a trial court, where a district court sits as an appellate court reviewing the judgment of a county court, such a motion is not properly presented to the district court and it does not toll the time for appealing to the Nebraska Court of Appeals or Nebraska Supreme Court. See, *Hueftle v. Northeast Tech. Community College*, 242 Neb. 685, 496 N.W.2d 506 (1993); *In re Guardianship and Conservatorship of Sim*, 233 Neb. 825, 448 N.W.2d 406 (1989); *State v. Deutsch, ante* p. 186, 507 N.W.2d 681 (1993). The record in this case shows, however, that Bartunek's appeal to this court was filed within 30 days of the date when the district court reversed the decision of the county court. Therefore, Bartunek's appeal was timely filed. See Neb. Rev. Stat. § 25-1912 (Cum. Supp. 1992). We also note the recent Nebraska Supreme Court decision of *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994), which held that a judgment of the district court which disposes of the appeal of a final order of an inferior court is a final order, even when the case is remanded for further proceedings in the

inferior court. In the present case, the district court, acting as an appellate court, reversed the decision of the county court granting Bartunek's motion for summary judgment. Accordingly, under *Rohde*, the district court's reversal is a final, appealable order.

■ In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *VonSeggern v. Willman*, 244 Neb. 565, 508 N.W.2d 261 (1993).

■ A summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom and that the moving party is entitled to judgment as a matter of law. *Transamerica Commercial Fin. Corp. v. Rochford*, 244 Neb. 802, 509 N.W.2d 214 (1993).

On appeal to this court, Bartunek's assignments of error can be summarized as follows: (1) The district court erred in not summarily affirming the decision of the county court because of Hormel's failure to file a statement of errors in the district court pursuant to Neb. Ct. R. of Cty. Cts. 52(I)(G) (rev. 1992); (2) the district court erred by not finding that Bartunek did not recover his full loss, which is a prerequisite to Hormel's claim for subrogation; and (3) the district court erred by failing to find that there was no identifiable portion of the verdict to which Hormel's subrogation interest, if any, could attach.

Bartunek's first assignment of error involves rule 52(I)(G), which provides that "[w]ithin 10 days of filing a notice of appeal, the appellant shall file with the district court a statement of errors, which shall consist of a separate, concise statement of each error a party contends was made by the trial court."

The record reveals that Hormel timely filed its notice of appeal to the district court for Dodge County, but Hormel did not file a separate statement of errors within 10 days of the filing of the notice of appeal. However, with its notice of appeal Hormel filed a pleading entitled "Statement of Issues Upon Appeal," which contained separate, concise statements of each

error Hormel argues was made by the county court.

 We have previously held that the purpose of rule 52(I)(G) is to "specifically direct the attention of the reviewing court to precisely what error was allegedly committed by the lower court and to advise the nonappealing party of what is specifically at issue in the appeal." *State v. Boye*, 1 Neb. App. 548, 550, 499 N.W.2d 860, 861 (1993). In *Boye*, the appellant's notice of appeal contained several general errors and one specific assignment of error with regard to the excessiveness of the appellant's sentence. We held that generalized statements are directly contrary to the clear purpose of the rule and need not be considered by the district court or by this court on appeal from the district court. However, the statement in the notice of appeal claiming excessive sentence was concise, fulfilled the purpose of the rule, and was, therefore, a properly assigned error reviewable by appellate courts, despite the fact that a separate "Statement of Errors" was not filed. It is also true that

> compliance with the requirements of rule 52(I)(G) is not a prerequisite to the district court's or an appellate court's jurisdiction over an appeal of a decision rendered by the county court. That rule is simply a procedural tool designed to frame the issues to be addressed in the appeal to the district court.

*Lindsay Ins. Agency v. Mead*, 244 Neb. 645, 648, 508 N.W.2d 820, 823 (1993).

Since Hormel's "Statement of Issues Upon Appeal" filed with its notice of appeal of the county court judgment contained separate, concise, and specific errors allegedly made by the county court, Hormel sufficiently complied with rule 52(I)(G). The district court was also free to consider plain error committed by the county court that was not assigned. *Id.* Accordingly, the district court did not err by failing to summarily affirm the judgment of the county court based on Hormel's failure to file a "Statement of Errors." Bartunek's first assignment of error is without merit.

Bartunek's next assignments of error are that the district court erred by not finding that Bartunek did not recover his full loss, which would be a prerequisite to Hormel's claim for subrogation, and that the district court erred by failing to find

that there was no identifiable portion of the verdict to which Hormel's subrogation interest, if any, could attach. We address these jointly.

As an employee of Hormel, Bartunek was the beneficiary of a group medical and disability benefit plan funded by Hormel pursuant to a collective bargaining agreement between United Food and Commercial Workers International Union, Local No. 22, AFL-CIO, and Hormel. Hormel based its right to subrogation on language contained in its "Employee Benefits" handbook. With regard to health care benefits, the employee handbook provided:

**Subrogation Rights**

In the event of any payment by the Company for health care expenses, the Company shall be subrogated to all rights of recovery which you or your dependent, receiving such payment, may have against any person or organization. You or your dependent must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. In addition, you or your dependent must do nothing after the loss to prejudice such rights.

The "Sick Leave Pay Plan" section of Hormel's employee handbook provided:

In the event of any payment of sick leave pay by the Company where the disability period exceeds four weeks, the Company shall be subrogated to all rights of recovery which an employee, receiving such payment, may have against any person or organization. The employee shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The employee shall do nothing after the loss to prejudice such rights.

In Nebraska, a subrogation clause that gives an insurer a right to subrogation against a third-party tort-feasor for medical payments made is a valid and enforceable contractual provision. See, *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 498 N.W.2d 74 (1993); *Milbank Ins. Co. v. Henry*, 232 Neb. 418, 441 N.W.2d 143 (1989). The rule would be the same where that contract expressly provides for subrogation with respect to sick

leave benefits. The subrogation clause is enforceable against Bartunek, even though he is a third-party beneficiary of the collective bargaining agreement between the union and Hormel. See, *Shelter Ins. Cos. v. Frohlich, supra*; *Haakinson & Beaty Co. v. Inland Ins. Co.*, 216 Neb. 426, 344 N.W.2d 454 (1984) (a third-party beneficiary who accepts a benefit under a contract also assumes an obligation imposed by the contract conferring the benefit). Generally, subrogation

> "is substitution of one person who is not a volunteer, a subrogee, for another, a subrogor, as the result of the subrogee's payment of a debt owed to the subrogor so that the subrogee succeeds to the subrogor's right to recover the amount paid by the subrogee." . . . " ' " 'Subrogation is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other.' " ' "
> . . . The preceding applies to subrogation based on a contract, known as conventional subrogation, as well as to subrogation arising by operation of law, that is, legal subrogation.

(Citations omitted.) *Shelter Ins. Cos.*, 243 Neb. at 117, 498 N.W.2d at 78.

The rationale behind the right of subrogation is that (1) an insured should not be allowed to recover twice for a single injury, which might occur if the insured was allowed to recover from both the tort-feasor and the insurer, and (2) the insurer should be reimbursed for payments it made that should have been paid by the wrongdoer. See, *id.*; 16 George J. Couch, Cyclopedia of Insurance Law § 61:18 (rev. ed. 1983). Subrogation is an equitable principle, the purpose of which

> is to prevent a double recovery by the insured. Under circumstances where an insured has received full damages from the tortfeasor and has also been paid for a portion of those damages by the insurer, he receives double payment—he has been made more than whole. Only under those circumstances is the insurer, under principles of equity, entitled to subrogation. Subrogation is to be allowed only when the insured is compensated in full by recovery from the tortfeasor. The insured is to be made whole, but no more than whole.

*Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 272, 316 N.W.2d 348, 353 (1982).

The Nebraska Supreme Court has recently held that "in the absence of a valid contractual provision or statute to the contrary, an insurer may exercise its right of subrogation only when the insured has obtained an amount that exceeds the insured's loss." *Shelter Ins. Cos.*, 243 Neb. at 122, 498 N.W.2d at 81. Shelter sought subrogation for $10,000 in medical payments against Frohlich's $212,500 settlement from the Denbestes, one of whom was the tort-feasor, when Frohlich's medical expenses exceeded $50,000. However, Frohlich refused Shelter's demand on the ground that her settlement notwithstanding, she had not been fully compensated for her injuries, a prerequisite to Shelter's subrogation. The Supreme Court reversed the grant of summary judgment in Shelter's favor, holding:

> *Whether Shelter's subrogation right can be enforced against Frohlich requires resolution of factual issues, such as the amount of medical costs incurred by Frohlich and other damages sustained by her.* See, *Skauge v. Mountain States Tel. & Tel., supra*; *Oss v. United Services Auto. Ass'n, supra*. Additionally, other factors affecting enforceability of a subrogation right may include the tort-feasor's ability to pay beyond the amount of the subrogor's settlement and whether the settling parties have stipulated that the settlement satisfies all damages sustained by the subrogor. See *Rimes, supra. If Frohlich's damages, as later determined at the trial level, exceed the amount which she received in settlement of her claim against Denbestes, Frohlich has not been fully compensated for her loss*, and, consequently, Shelter is not entitled to any part of the proceeds from settlement of Frohlich's claim against the Denbestes.

(Emphasis supplied.) *Shelter Ins. Cos. v. Frohlich*, 243 Neb. 111, 124, 498 N.W.2d 74, 82 (1993).

The difference between *Shelter Ins. Cos.* and the instant case is obvious. *Shelter Ins. Cos.* involved a voluntary settlement with the tort-feasor's insurer, whereas here, Bartunek's recovery results from a jury verdict. Thus, although it is clear

that "full recovery" by Bartunek is a prerequisite to Hormel's recovery of its subrogation interest, we must address how to determine if "full recovery" has occurred in the instance of a jury verdict, as distinguished from recovery by settlement as was involved in *Shelter Ins. Cos.*

Bartunek recovered a $45,000 judgment against the tort-feasor, but he argues that since his damages are well in excess of that amount, Hormel cannot assert subrogation rights because he did not receive "full recovery." Bartunek's position, fleshed out at oral arguments, is that he is entitled, should the district court's remand be upheld, to adduce evidence anew on the extent of his damages. Bartunek argues that such evidence would include the cost of obtaining the $45,000 verdict which Bartunek now characterizes as less than "full recovery." In other words, Bartunek argues for a second trial on damages, including his litigation costs, if there is to be a remand.

 Jury verdicts have a certain sanctity in our judicial system, evidenced, at least in part, by the limited appellate review. A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any evidence presented to the jury upon which it could find for the successful party. *McClymont v. Morgan*, 238 Neb. 390, 470 N.W.2d 768 (1991). Credibility of witnesses and the weight to be given to their testimony are solely for the consideration of the jury. *Stauffer v. School Dist. of Tecumseh*, 238 Neb. 594, 473 N.W.2d 392 (1991). Conflicts in expert testimony are also for the jury's resolution. *Palmer v. Forney*, 230 Neb. 1, 429 N.W.2d 712 (1988). There is no formula for computing damages in a personal injury case, and the final verdict is usually made up of a number of factors. If the verdict is not so disproportionate to the injury as to disclose prejudice and passion, it will not be disturbed upon appeal. *Steinauer v. Sarpy County*, 217 Neb. 830, 353 N.W.2d 715 (1984). We bear in mind the high place that jury verdicts occupy in our judicial system when considering whether Bartunek's recovery against the tort-feasor, Gentrup, is "full recovery" and whether there is to be another trial on damages.

 Most importantly, when we consider Bartunek's argument that the jury verdict against the tort-feasor cannot be deemed "full recovery," we take into account the doctrine of

collateral estoppel, often referred to as "issue preclusion." See, *Hickman v. Southwest Dairy Suppliers, Inc.*, 194 Neb. 17, 230 N.W.2d 99 (1975); *Vincent v. Peter Pan Bakers, Inc.*, 182 Neb. 206, 153 N.W.2d 849 (1967). We quote the following from *State v. Gerdes*, 233 Neb. 528, 530, 446 N.W.2d 224, 227 (1989):

> The U.S. Supreme Court characterized the phrase "collateral estoppel" in *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970): " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." In *State ex rel. Douglas v. Morrow*, 216 Neb. 317, 320, 343 N.W.2d 903, 905 (1984), this court stated: "Collateral estoppel may be applied where an identical issue was decided in a prior action, there was a judgment on the merits which was final, the party against whom the doctrine is to be applied is a party or is in privity with a party to the prior action, and there was an opportunity to fully and fairly litigate the issue in the prior litigation."

The court in *Gerdes* also said that implicit in the principle is the notion that collateral estoppel applies "when an issue in a present proceeding has necessarily been determined in a prior proceeding." 233 Neb. at 531, 446 N.W.2d at 227. *Gerdes* also imposes the burden of proof upon the litigant who seeks to rely upon the doctrine of collateral estoppel.

Writing about issue preclusion in *Krohn v. Gardner*, 238 Neb. 460, 471 N.W.2d 391 (1991), the court stated that the basis of the doctrine is that the party to be affected, or someone with whom he or she is in privity, has litigated or has had an opportunity to litigate the same matter in the prior action. " 'Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to a prior suit or as a privy.' " *Id.* at 463, 471 N.W.2d at 394, quoting *Hickman v. Southwest Dairy Suppliers, Inc., supra*. The doctrine of issue preclusion applies even though the claim, demand, purpose, or subject matter of

the two suits is not the same, if the other conditions for its application are met. See *Brommer v. City of Hastings*, 212 Neb. 367, 322 N.W.2d 787 (1982). That a stranger to the first suit can assert the theory of issue preclusion in the second suit is well established, as is the notion that mutuality of estoppel is not a prerequisite for the doctrine's application. See *JED Constr. Co., Inc. v. Lilly*, 208 Neb. 607, 305 N.W.2d 1 (1981).

Accordingly, applying the doctrine of collateral estoppel against the backdrop of the sanctity of jury verdicts, we find that Bartunek had "full recovery" against the tort-feasor for purposes of determining whether Hormel is entitled to subrogation. Bartunek's suit against the tort-feasor involved an adjudication of his medical expenses and lost wages resulting from his tortious injury. The record in this case, which is the "second case" for issue preclusion purposes, shows that Hormel introduced the petition from the tort case in which Bartunek alleged that he had incurred aggregate medical bills in the amount of $13,706 and that he had "suffered loss of earnings to date aggregating $7,305." Bartunek alleged each of those elements as separate "causes of action" and prayed for judgment in those amounts against Gentrup. Thus, the matter of medical expenses and lost wages, for which Hormel seeks subrogation, was obviously in issue from the pleadings.

Remembering that the burden of proof on collateral estoppel was Hormel's, we observe that Hormel introduced into evidence jury instruction No. 11 given in Bartunek's suit against Gentrup. Instruction No. 11 charged the jury that it should award those elements of damage proximately caused by Gentrup's negligence, including "[t]he reasonable value of the medical and hospital care and supplies reasonably needed by and actually provided to the plaintiff" and "[t]he wages the plaintiff has lost because of his inability to work." Clearly, the issues of medical expenses and lost wages were submitted to the jury for its determination in the first case.

Next, we find that Bartunek's testimony to the jury in the first case was also placed in evidence in the case at bar. That testimony establishes the days he was unable to work from the time of the accident on January 12, 1991, until the time of the trial. The evidence in this case also shows that Bartunek's

medical bills, $3,992 of which Hormel paid under its contract with the labor union, were received into evidence in the first case against Gentrup and were then introduced again in this case. It is an inescapable conclusion that the amount of Bartunek's lost wages and medical expenses incurred as a result of injuries caused by the accident was directly litigated in the tort case which resulted in the jury verdict of $45,000. The pleadings made these matters issues, there was evidence introduced thereupon, the jury was instructed to consider lost wages and medical expenses as items of Bartunek's damage, and a verdict in excess of the amount of those items was returned in Bartunek's favor.

We are convinced that all of the elements for issue preclusion are present in the evidentiary record presented to the county court. Contrary to the county court's holding, it is not a question of whether the jury *actually* included lost wages or medical expenses in its verdict. This could be determined only by special verdict or jury interrogatories, since Neb. Rev. Stat. § 27-606 (Reissue 1989) prohibits evidential inquiry into the deliberations of the jury. The question is whether the issues of medical expenses and lost wages were litigated by Bartunek. Even though Bartunek, who did not appeal the jury's verdict, now contends that the verdict was not fully reflective of all of his damages, that argument misses the point. If Bartunek fully litigated the issues of medical expenses and lost wages in the tort case, then he is not entitled to a second adjudication of these same issues when Hormel asserts its contractual subrogation rights, so long as the jury's verdict exceeds the amount of Hormel's payments. The evidence in the instant case establishes that issues of medical expenses and lost wages were previously litigated and were part of the tort verdict. Therefore, Bartunek is collaterally estopped from claiming that the jury's verdict is not "full recovery" for purposes of determining whether Hormel can recover its subrogation.

Although the reported decisions on this precise issue are surprisingly few, a similar result on nearly identical facts was reached in *United Pacific Ins. Co. v. Boyd*, 34 Wash. App. 372, 661 P.2d 987 (1983). Boyd appealed the determination that United Pacific Insurance Co. was entitled to a subrogation

interest in a judgment Boyd recovered from a tort-feasor. Boyd was injured in an automobile accident with an employee of Northwest Landscaping Co. After the accident, Boyd was paid $6,200 for lost earnings and $2,138.84 for medical expenses by United Pacific, the company which insured Boyd. Boyd filed suit against Northwest Landscaping seeking, among other things, the recovery of medical expenses and lost wages. After a jury trial, Boyd received a verdict of $14,550.91. United Pacific filed an action to recover its subrogation interest in this judgment. In that action, Boyd argued that he was not made whole by the jury verdict and that this should be taken into consideration with regard to United Pacific's subrogation interest. The court granted summary judgment in favor of United Pacific. On appeal, the Washington Court of Appeals held:

> In his complaint, Mr. Boyd sought the recovery of medical expenses and lost earnings. The jury was instructed to fully compensate Mr. Boyd for these and determined he sustained injuries of $14,550.91. The jury determined the money necessary to make Mr. Boyd "whole". The fact Mr. Boyd has placed a greater value on his damages than the jury did does not allow him to relitigate the issue in a subsequent proceeding. We hold Mr. Boyd is collaterally estopped from denying that he was made whole by the jury verdict.

*Id.* at 376, 661 P.2d at 990. See, also, *Incollingo v. Maurer,* 394 Pa. Super. 352, 575 A.2d 939 (1990) (holding that an injured motorist was collaterally estopped from relitigating in a separate civil action the extent of his damages against the driver of a third vehicle, when an arbitration proceeding had assessed damages at $70,000 under the injured motorist's uninsured motorist coverage invoked due to a "phantom vehicle," even though injured motorist argued that $70,000 was inadequate).

While Bartunek may place a greater value on his damages than the jury did (he asserts loss of earnings in excess of $240,000 in his brief), the law considers that he has obtained "full recovery." Consequently, he is collaterally estopped from relitigating the amount of his damages in this proceeding, since his recovery exceeded the amount of Hormel's subrogation

interest and he had litigated the issues of lost wages and medical expenses in the tort action. Thus, the district court correctly reversed the judgment of the county court and remanded this matter.

We also dispose of a constitutional challenge set forth by Bartunek. In its brief, Hormel cites Neb. Rev. Stat. § 44-3,128.01 (Cum. Supp. 1992) in support of one of its arguments. After Hormel's brief was filed, Bartunek filed a notice in this court, pursuant to Neb. Ct. R. of Prac. 9E (rev. 1992), challenging the constitutionality of § 44-3,128.01. While we recognize that the Nebraska Court of Appeals does not have jurisdiction to determine the constitutionality of a statute, see Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 1992), this court may, when necessary to the decision in the case before us, determine whether a constitutional question has properly been raised. In the present case, Bartunek has not properly challenged the constitutionality of this statute. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *Houska v. City of Wahoo*, 235 Neb. 635, 456 N.W.2d 750 (1990); *Snyder v. IBP, inc.*, 235 Neb. 319, 455 N.W.2d 157 (1990). Since Bartunek's constitutional challenge was not considered by the lower court and was raised for the first time on appeal, the issue was not properly preserved for appellate review. When a challenge to the constitutionality of a statute is properly raised, the Supreme Court has jurisdiction; however, when a constitutional challenge is not properly raised, as is true here, then we proceed to decide the remaining issues the case presents.

In his brief, Bartunek argues the issue of attorney fees and potential setoff amounts for trial costs against Hormel's subrogation in the event Hormel is allowed subrogation against the $45,000 judgment. However, since the county court sustained Bartunek's motion for summary judgment in the declaratory judgment action, these issues were never considered by the county court. The district court also did not consider these issues because it reversed the decision of the county court and remanded the case for further proceedings. In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial

court. *Barthel v. Liermann, ante* p. 347, 509 N.W.2d 660 (1993). See, also, *Lickert v. City of Omaha*, 144 Neb. 75, 12 N.W.2d 644 (1944). Therefore, these assignments of error will not be considered by this court, and the issues may be addressed upon remand.

The county court erred by sustaining Bartunek's motion for summary judgment in the declaratory judgment action. The district court was correct when it reversed the judgment of the county court and remanded the matter for further proceedings.

AFFIRMED.