**TAMPA PORT AUTHORITY, Plaintiff,**

and

**Westchester Fire Insurance Co., Intervening Plaintiff,**

v.

**M/V DUCHESS, In Rem, and BT Straits, Inc., In Personam, Defendants/Third Party Plaintiff,**

v.

**Pilot Lambert W. Ware, Third Party Defendant.**

No. 94–1727–CIV–T–23C.

United States District Court, M.D. Florida, Tampa Division.

Dec. 8, 1997.

---

Nathaniel G.W. Pieper, Lau, Lane, Pieper, Conley & McCreadie, P.A., Tampa, FL, for M/V Duchess, BT Straits, Inc.

Margaret Diane Mathews, Anthony John Cuva, Akerman, Senterfitt & Eidson, P.A., Tampa, FL, for Lambert M. Ware, Pilot.

## ORDER

JENKINS, United States Magistrate Judge.

Before the court is Westchester Fire Insurance Company's Motion To Alter or Amend Judgment (Dkt.173) and the response by Tampa Port Authority (Dkt.184).[1]

On June 6, 1997, following a bench trial, this court entered a memorandum opinion in which it found that *in rem* defendant M/V DUCHESS was liable for negligence for striking and damaging a pier owned by Tampa Port Authority ("TPA"). (Dkt.151). The court further found that the amount of damages recoverable from the DUCHESS was $151,642 plus prejudgment interest. The court also found that TPA's insurer, Westchester Fire Insurance Company ("Westchester"), had previously paid TPA $338,117 on its claim for this damage, reserving a right to subrogation. Accordingly, the court's judgment awarded $151,642 plus prejudgment interest to "Plaintiff Tampa Port Authority and its subrogee Westchester Fire Insurance Company." (Dkt.172). Westchester now seeks to exercise its right of subrogation and asks the court to modify the judgment to state that Westchester, not TPA, is entitled to recover the $151,642 plus prejudgment interest from M/V DUCHESS.

The law of subrogation is well settled in Florida and in many other states that an insured must be fully compensated for its losses before the insurer can share in any recovery from the tortfeasor.[2] *See*

Lance Sheldon Hamilton, Holland & Knight, LLP, Tampa, FL, for Tampa Port Authority.

Donald Lee Craig, E. Tyron Brown, Butler, Burnette & Pappas, Tampa, FL, for Westchester Fire Insurance Company.

---

**1.** The parties have consented to proceed before the Magistrate Judge pursuant to Title 28, United States Code, Section 636(c) and Fed.R.Civ.P. 73.

**2.** Although this case was brought in admiralty, state law governs the issue of subrogation because there is no judicially established federal admiralty rule addressing this subject. *See Wilburn Boat Co. v. Fireman's Fund Ins.*

*Magsipoc v. Larsen,* 639 So.2d 1038, 1040–41 (Fla. 5th DCA 1994); *Rubio v. Rubio,* 452 So.2d 130, 132 (Fla. 2d DCA 1984); *Florida Farm Bureau Ins. Co. v. Martin,* 377 So.2d 827, 831 (Fla. 1st DCA 1979); *see also* Elaine M. Rinaldi, *Apportionment of Recovery Between Insured and Insurer in a Subrogation Case,* 29 Tort & Ins.L.J. 803, 807 (1994) (identifying this principle as the majority rule and listing twenty-five states that have adopted it).

Westchester does not dispute this rule of law, but contends that this court's award of $151,642 in damages made TPA whole. TPA, on the other hand, argues that it has not been made whole because its actual repair costs exceeded the total of the damages awarded by the court and the claim amount recovered from Westchester. TPA also contends that its $200,000 in attorneys' fees and costs must be considered in determining whether it has been made whole.

The dispute, therefore, centers around what damage elements may be considered in determining whether an insured has been made "whole." Both Westchester and TPA claim support for their respective positions in *Florida Farm Bureau Ins. Co. v. Martin,* 377 So.2d 827 (Fla. 1st DCA 1979). In *Florida Farm Bureau,* the insured, the insurer, and the tortfeasor all stipulated during the course of the litigation that the damages sustained by the insured totaled $110,000. The parties also stipulated that the insured's maximum possible recovery, including payments by the insurer, the tortfeasor, and the tortfeasor's insurer was $95,035.[3] *See id.* at 828. The trial court denied the insurer's request for subrogation because, based on the stipulations, the insured would not be made whole. The appellate court upheld the trial court's ruling, citing "general

principles of subrogation" found in the case law of Florida and other states. *Id.* at 831.

■ Unlike the parties in *Florida Farm Bureau,* however, the parties in the present case did not stipulate to an amount of damages sustained by TPA.[4] Rather, the damages were determined in a trial before the court. Therefore, *Florida Farm Bureau* offers little guidance in this situation, where the damages were determined through litigation rather than by stipulation. The only language in *Florida Farm Bureau* relevant to the present case is found in a quote from an earlier case: "We consider that a party ... has received full compensation for his loss, within the meaning and application of the general principles [of subrogation] ... when he has received full payment of a judgment ... or an agreed settlement." *Id.* at 831 (quoting *Gov't Employees Ins. Co. v. Graff,* 327 So.2d 88 (Fla. 1st DCA 1976)). This language strongly suggests that TPA would be made whole upon receipt of the $151,642 awarded by the court judgment. Nevertheless, because this language is dicta, it is appropriate to examine cases with factual scenarios more similar to the present case.

The parties have not cited and the court's research has not yielded any cases construing Florida subrogation law in which an insured argued that it was not made whole by a court judgment. However, appellate courts in other states which have considered this issue have held that a jury verdict constitutes full recovery for purposes of determining whether an insurer is entitled to subrogation. *See Bartunek v. Geo. A. Hormel & Co.,* 2 Neb.App. 598, 513 N.W.2d 545, 554 (1994); *United Pac. Ins. Co. v. Boyd,* 34 Wash.App. 372,

Co., 348 U.S. 310, 314, 75 S.Ct. 368, 99 L.Ed. 337 (1955). The parties cite only Florida law in their memoranda.

3. The parties apparently subsequently entered into a settlement agreement for $95,035. *See id.* at 831.

4. TPA argues that Westchester stipulated that TPA's damages exceeded the $338,000 claim payment when Westchester subtracted the $75,000 deductible and when it acknowledged the existence of certain uninsured damages. As TPA cites no authority for this proposition and the court has found none, this argument is rejected.

661 P.2d 987, 990 (1983) ("*Boyd*"). Applying the doctrine of collateral estoppel, the courts in these cases concluded that, once the issue of damages was fully litigated before the jury, the insured was precluded from claiming that the damages awarded by the jury did not constitute full compensation. *See Bartunek*, 513 N.W.2d at 554; *Boyd*, 661 P.2d at 990. As the *Bartunek* court stated: "While [the insured] may place a greater value on his damages than the jury did (he asserts loss of earnings in excess of $240,000 in his brief), the law considers that he has obtained 'full recovery.' " *Bartunek*, 513 N.W.2d at 554; *see also Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis.2d 263, 316 N.W.2d 348, 354 (1982) (court "obliged to conclude" that damages found by a jury would make plaintiff whole).

Although *Bartunek* and *Boyd* are not binding authority, these cases represent sound reasoning which this court believes the Florida Supreme Court would follow if it were to face this issue. Therefore, if the issue of TPA's damages has been fully litigated before the court, TPA is precluded from claiming that the court's award did not make it whole.

In the pretrial statement, TPA listed the following in the section entitled "Statement of the Elements of Damages Sought":

| | |
|---|---|
| Repair Cost | $522,759.00 |
| 20% of Repair Cost | $104,551.80 |
| Survey & Diving Report | $ 18,860.73 |
| AMDIVER Marine Services | $ 720.00 |
| Contractor's Delay | $ 15,814.98 |
| Interest | [no amount provided] |
| Attorneys' Fees | [no amount provided] |

(Dkt.48, p. 8). These damage categories totaled $662,706.51. In its trial brief, TPA stated: "Westchester paid TPA an amount of $338,117.00 pursuant to the policy of insurance. TPA's *full measure of damages*, however, amounts to $662,706.51, excluding interest, costs and attorneys' fees. *To be made whole, therefore*, the Court must award TPA the sum of $324,589.51 plus its attorneys' fees, interest and costs." (Dkt.60, p. 30–31) (emphasis added).

TPA, therefore, requested that this court grant it the damages necessary to make it whole, and calculated those dam-

ages to be $324,589.51. The court instead awarded $151,642.00. The court's memorandum opinion explained the court's reasons for rejecting the higher level of damages sought:

> The other estimates of the cost of repair were predicated on the assumption that the outer 90-foot section of the Pier was so damaged by the DUCHESS allision alone that demolition and reconstruction of the outer section was required. This assumption is not supported by the preponderance of credible evidence. Rather, it is apparent that the fender renovation project was simply a "band-aid approach" to a seriously deteriorated structure.... To award plaintiff the sum it paid Durocher for the additional work ($522,759)—or the cost of repair paid by its insurer ($390,355)—would be an undeserved windfall under the circumstances presented.

(Dkt.151, p. 40–41). Therefore, TPA's claim that it should recover for additional repair costs above $151,642 was previously considered and rejected by this court. TPA is thus collaterally estopped from arguing that it must recover for these additional costs in order to be made whole.

■ TPA also asserts that it is entitled to recover its fees and costs prior to Westchester recovering any damages through subrogation. In support of this assertion, TPA again relies on *Florida Farm Bureau*, wherein the court affirmed the general rule of subrogation as being that the insurer may recover only the excess remaining " 'after insured is fully compensated for his loss and the cost and expenses of the recovery thereof.' " *Florida Farm Bureau*, 377 So.2d at 829 (quoting 46 C.J.S. Insurance $ 1209(b)). TPA thus contends that Westchester may not receive any portion of the $156,642 because the full amount should be applied toward TPA's costs and expenses of $200,000.

It is true that courts and commentators routinely state that the law of subrogation requires that fees and costs be deducted from an insured's recovery before the in-

surer is entitled to subrogation. *See, e.g., Rubio v. Rubio,* 452 So.2d 130 (Fla.2d DCA 1984), (citing G. Couch, 16 Cyclopedia of Insurance Law 2d § 61:64 (rev. ed.1983)). However, cases involving actual claims for fees and costs have clarified that attorneys' fees and other litigation costs are deductible only when the insurer does not participate with the insured in attempting to recover from the tortfeasor. *See Oakley v. Fireman's Fund of Wisconsin,* 162 Wis.2d 821, 470 N.W.2d 882, 886 (1991); *Schwab v. Town of Davie,* 492 So.2d 708, 710 (Fla. 4th DCA 1986) (where no evidence of substantial litigation assistance to insured by insurer, fees and costs are deducted before funds are paid to insurer); *Bell v. Fed. Kemper Ins. Co.,* 693 F.Supp. 446, 451 (S.D.W.V.1988) (where insurer does not join action against tortfeasor, insurer subject to proportionate share of expenses, including attorneys' fees).

*Oakley* involved a factual scenario similar to the present case. In *Oakley,* the insured was injured in an automobile accident, and his insurance company paid him $50,000 under his policy. 470 N.W.2d at 883. Together the insured and insurer sued the driver of another vehicle involved in the accident. *See id.* During the course of this litigation, the parties stipulated that the insured's damages totaled $100,000. *See id.* at 884. When the insurer asserted a claim for a portion of this $100,000 through subrogation, the insured argued that his attorneys' fees must first be deducted before the insurer could share in the funds recovered from the tortfeasor. *See id.* The court of appeals agreed, holding that the insured would not be made whole if attorneys' fees were deducted from his recovery. *See id.* The Wisconsin Supreme Court reversed, however, concluding that because the insurer had actively participated in all aspects of the litigation, the insured was not entitled to a contribution from his insurer toward his attorneys' fees. *See id.* at 885.

Like the insurer in *Oakley,* Westchester actively participated in all aspects of the litigation against the DUCHESS. There-

fore, TPA is not entitled to have any portion of the $151,642 applied toward its costs and attorneys' fees.

As TPA has been made whole by the award of $151,642 against the DUCHESS, notwithstanding that its attorneys' fees arguably reduce or offset this recovery, Westchester is entitled to exercise its right of subrogation against TPA. Westchester is entitled to recover any amounts recovered from the DUCHESS up to the amount of its claim payment to TPA of $338,117. Westchester's motion to amend the judgment in this case to reflect this entitlement is therefore **GRANTED.**

It is **ORDERED** that:

(1) Westchester Fire Insurance Company's Motion To Alter or Amend Judgment (Dkt.173) is **GRANTED.** An amended judgment consistent with this order shall be entered.

**DONE AND ORDERED.**