**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**Shannon PERKINS Individually and As Next Friend for Joanna Magee, Joshua Magee and Christian Blair, Appellee.**

**No. 11–04–00259–CV.**

Court of Appeals of Texas, Eastland.

July 13, 2006.

George Thompson, Thompson & Kirby, Lubbock, Ken K. Slavin, Kemp Smith LLP, El Paso, for appellant.

Charles Steven Dunn, Dunn & Walker, Lubbock, for appellee.

Panel consists of: WRIGHT, C.J, and McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

State Farm Mutual Automobile Insurance Company appeals from the trial court's order striking its plea in intervention. We reverse and remand this cause to the trial court for further proceedings.

*Background Facts*

Shannon Perkins was involved in an automobile accident with Eddie Mike Cooper Jr. on May 22, 2003. Perkins and her minor children were injured in the accident. At the time of the accident, Cooper was driving a dump truck owned by Harold Oaks. Perkins had an automobile insurance policy with appellant, State Farm Mutual Automobile Insurance Company. Cooper did not have automobile liability insurance. As a result of the accident, State Farm paid $25,000 in uninsured/underinsured motorist benefits (UM benefits) to Perkins for her injuries under the terms of her policy.

Perkins, individually and as next friend of her minor children, filed a negligence suit against Cooper and Oaks for personal injury damages arising from the accident. She alleged that Cooper was extremely intoxicated and driving in the wrong lane of traffic at the time of the accident. Perkins further alleged that Oaks had been negligent in failing to take steps to prevent Cooper from driving the dump truck. Perkins was unable to obtain service on Cooper, and her case proceeded against Oaks. Oaks had an automobile liability insurance policy with State Farm.

State Farm intervened in the suit seeking reimbursement for the UM benefits that it had paid to Perkins under her policy. In response, Perkins filed a motion to strike State Farm's subrogation claim. In the motion, Perkins asserted that State Farm could not proceed against its own insured, Oaks, in a subrogation action. With the agreement of Perkins and State Farm, the trial court delayed consideration of State Farm's intervention until after the trial of Perkins's case against Oaks.

At the trial, the jury found that Oaks was negligent and awarded Perkins $53,000 in personal injury damages. The jury awarded a total of $1,100 in damages

to Perkins's minor children. The trial court rendered judgment in accordance with the jury verdict. Oaks's policy covered the judgment amount. State Farm's subrogation claim involved the UM payment that it had made to Perkins individually for her injuries. The subrogation claim did not involve payments that State Farm had made to Perkins's minor children under the terms of Perkins's policy. The trial court ordered State Farm to pay $25,000 of the proceeds of the judgment amount into the registry of the court pending determination of State Farm's subrogation claim.

The trial court held a hearing on Perkins's motion to strike State Farm's subrogation claim. On October 4, 2004, the trial court signed an order striking State Farm's claim for subrogation. In the order, the trial court did not specifically state that it had ruled on the merits of State Farm's subrogation claim, as opposed to ruling only on the procedural requirements for intervention. However, the trial court did state that it intended the order to represent a final order as to all matters regarding State Farm's request for subrogation against Oaks. State Farm challenges the trial court's order in this appeal.

### Issues on Appeal

State Farm presents two issues for review. In its first issue, State Farm argues that the trial court abused its discretion in striking its intervention. In its second issue, State Farm asserts that the trial court erred in determining that it was not entitled to subrogation or reimbursement for the benefits paid to Perkins under her UM coverage from the proceeds paid under Oaks's policy.

### Standard of Review

Rule 60 of the Texas Rules of Civil Procedure provides that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex.R. Civ. P. 60. We review a trial court's ruling striking an intervention under an abuse of discretion standard. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Pennzoil Co.*, 866 S.W.2d 248, 251 (Tex.App.-Corpus Christi 1993, no writ). A trial court abuses its discretion in striking the plea in intervention when (1) the intervenor establishes that it could have brought suit in its own right, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Guaranty Fed.*, 793 S.W.2d at 657; *Caprock Inv. Corp. v. Fed. Dep. Ins. Corp.*, 17 S.W.3d 707, 710–11 (Tex. App.-Eastland 2000, pet. denied).

State Farm asserts that its intervention met the three elements required for showing an abuse of discretion. First, State Farm contends that it had contractual and statutory rights of subrogation for the UM benefits paid to Perkins under her policy and that, therefore, it could have brought suit in its own right. Second, State Farm contends that its intervention did not unduly complicate the case. Third, State Farm contends that, in the absence of its intervention, it would have been required to pay the judgment in full to Perkins prior to the determination of its subrogation rights. Thus, State Farm argues that the intervention was necessary to preserve its subrogation rights. *See Duke v. Wilson*, 900 S.W.2d 881, 886 (Tex.App.-El Paso 1995, writ denied) (intervention was necessary to prevent payment of a judgment in full to a plaintiff in a third party case prior to insurance carrier's recoupment of its subrogation interest).

Perkins asserts that the trial court did not abuse its discretion in striking State Farm's intervention. Perkins argues that an insurance company may not recover against its own insured in a subrogation action and that, therefore, State Farm has no right of subrogation against its insured, Oaks. Perkins also argues that the trial court may have concluded that the "made whole" and "common fund" doctrines precluded any recovery by State Farm.

*Subrogation and Reimbursement Issues*

■ We first decide whether an insurer that has paid UM benefits to an insured under one policy may seek subrogation or reimbursement for the payment of those benefits from another of its insureds under a different policy. The Texas courts have not addressed this issue. Subrogation is the right of one who has paid an obligation which another should have paid to be indemnified by the other. · *Employers Cas. Co. v. Dyess,* 957 S.W.2d 884, 886 (Tex.App.-Amarillo 1997, pet. denied) (citing BLACK'S LAW DICTIONARY 1427 (6th ed.1990)). There are three types of subrogation rights recognized in Texas: (1) equitable, or legal, subrogation; (2) contractual subrogation; and (3) statutory subrogation. *See Tex Ass'n of School Boards, Inc. v. Ward,* 18 S.W.3d 256, 258 (Tex.App.-Waco 2000, pet. denied).

In this case, State Farm asserts that it has contractual and statutory rights of subrogation for the UM benefits paid to Perkins under her policy. State Farm also asserts that it has a right to reimbursement for the UM payments under the terms of Perkins's policy. Perkins's policy contained the following provisions:

**OUR RIGHT TO RECOVER PAYMENT**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right.

. . . .

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

    1. Hold in trust for us the proceeds of the recovery; and

    2. Reimburse us to the extent of our payment.

Thus, the clear language of the policy provided State Farm with contractual rights of subrogation and reimbursement.

Article 5.06–1 of the Texas Insurance Code governs uninsured and underinsured motorist coverage. TEX. INS. CODE ANN. art. 5.06–1 (Vernon Supp.2005). Article 5.06–1(6) provides insurers with a statutory right of subrogation or reimbursement for payments of uninsured and underinsured motorist benefits:

In the event of payment to any person under any coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury, sickness or disease, or death for which such payment is made.

Under Article 5.06–1(6), State Farm has a statutory right of subrogation or reimbursement for the UM benefits paid to Perkins.

■ The issue in this case is whether State Farm may seek to enforce its subrogation and reimbursement rights against its own insured, Oaks. In arguing that State Farm may not seek subrogation against Oaks, Perkins relies on cases stating the general equitable rule that an in-

surer may not proceed against its own insured in a subrogation action. *See McBroome–Bennett Plumbing, Inc. v. Villa France, Inc.,* 515 S.W.2d 32, 36 (Tex. Civ.App.-Dallas 1974, writ ref'd n.r.e.); *see also AGIP Petroleum Co. v. Gulf Island Fabrication, Inc.,* 920 F.Supp. 1318, 1326 (S.D.Tex.1996); *Stafford Metal Works, Inc. v. Cook Paint and Varnish Co.,* 418 F.Supp. 56, 60 (N.D.Tex.1976). This rule, also known as the antisubrogation rule, provides that an insurer has no right of subrogation against its own insured for a claim arising from the very same risk for which the insured was covered. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of Midwest,* 248 A.D.2d 78, 85, 677 N.Y.S.2d 105 (N.Y.App.Div. 1998). The antisubrogation rule is based on public policy concerns. Courts have explained that permitting an insurer to sue its own insured for a liability covered by the insurance policy would violate basic equity principles, as well as violate sound public policy. *Stafford Metal Works,* 418 F.Supp. at 59 (citing *Home Ins. Co. v. Pinski Bros.,* Inc., 160 Mont. 219, 500 P.2d 945, 949 (1972)).

The *Stafford Metal Works* court explained five basic reasons for the antisubrogation rule. The first reason is purely conceptual. It is based on the premise that an insurer who seeks subrogation stands in the shoes of the insured and can take nothing by subrogation but the rights of the insured. Because a person cannot sue himself for damages, that person's insurer, who stands in the person's shoes for subrogation purposes, cannot sue the person either. 418 F.Supp. at 58. The second reason for the antisubrogation rule is based on public policy grounds. The insurer that has accepted premiums to cover certain risks should not be allowed to pass the same risks back to its insured in a subrogation action. Otherwise, the insurer would be allowed to avoid the coverage that the insured has purchased. *Id.* The third reason for the antisubrogation rule recognizes that the relationship between an insurer and its insured are fraught with conflicting interests. The fourth reason for the antisubrogation rule recognizes the possibility that, if insurers were permitted to sue their insureds for subrogation, the insurers would be able to obtain information from their insureds under the guise of policy provisions for later use in a subrogation action. The fifth reason for the antisubrogation rule is that an insurer's right to sue its insured could be interpreted by the insurer as a judicial sanction to breach the insurance policy. *Id.*

■ The application of the antisubrogation rule prevents inequitable results in cases involving a single insurance policy. An insurer who has paid a loss to its insured under a policy should not be allowed to sue that very insured or a co-insured under the policy to recover that same loss. *See McBroome–Bennett Plumbing,* 515 S.W.2d at 39 (court permitted insurer of general contractor to assert a subrogation claim against a subcontractor because the subcontractor was not an additional insured under the general contractor's policy). Otherwise, the insurer would be permitted to avoid the insured's coverage under the policy by allocating the risk of the loss back to the insured through subrogation.

This case, however, involves different insureds and separate and distinct insurance policies. State Farm paid UM benefits to Perkins under her policy, and State Farm seeks subrogation and reimbursement for those UM benefits from the proceeds paid under Oaks's liability policy. The policy concerns behind the antisubrogation rule are not present in this case. Permitting State Farm to seek subrogation and reimbursement does not allow it

to escape coverage under Oaks's policy, nor does it subject Oaks to any personal liability not covered by the policy. State Farm already has paid the entire judgment amount from the proceeds of Oaks's policy, with $25,000 of the judgment amount remaining in the registry of the trial court. Thus, a subrogation action does not pass the risk of loss back to Oaks or create a conflict of interest between State Farm and Oaks. Further, State Farm did nothing to breach its insurance policy with Oaks. Perkins initiated the suit against Oaks, and State Farm merely attempted to intervene to protect its subrogation interests. The antisubrogation rule should not apply under these circumstances.

State Farm's recovery of subrogation or reimbursement does not allow it to avoid policy obligations to Perkins. By providing uninsured/underinsured motorists coverage to Perkins, State Farm insured the risk that Perkins would be injured by an uninsured or underinsured motor vehicle. Oaks's policy covered the dump truck involved in the accident, and State Farm paid Perkins's judgment against Oaks under his policy. Because Oaks's policy covered the full judgment amount, the dump truck was not an uninsured or underinsured vehicle as that term was defined in Perkins's policy.[1] Therefore, the risk covered by Perkins's policy did not occur, and State Farm had no obligation to pay UM benefits. Because the insured risk did not occur, State Farm's recovery of subrogation or reimbursement will not result in an avoidance of coverage under Perkins's policy.

The *Stafford Metal Works* court applied the antisubrogation rule in a case involving different insureds with separate policies. The insurer seeking subrogation was the fire insurer for the plaintiff and the liability insurance carrier for the defendant. Based on the policy reasons for the antisubrogation rule, the court held that the insurer could not assert a subrogation claim against the defendant. *Stafford Metal Works*, 418 F.Supp. at 62. This case is factually distinguishable from *Stafford Metal Works*. The conflicts of interest present in *Stafford Metal Works* do not exist here. Additionally, in this case, State Farm has a statutory right to subrogation. The legislature did not include any language in Article 5.06–1(6) suggesting that the statutory right to subrogation does not apply when the insurer paying UM benefits also insures the person legally responsible for the damages. State Farm also has a contractual right to reimbursement. State Farm need not bring a subrogation action against Oaks to recover under the reimbursement provision in Perkins's policy. The reimbursement provision requires Perkins to hold in trust the proceeds of any recovery and reimburse State Farm to the extent of its UM payment.

Allowing State Farm to recover subrogation or reimbursement does not lead to inequitable results in this case. In similar cases, courts from other jurisdictions have permitted the insurer to pursue a subrogation claim or a reimbursement claim. *See Benge v. State Farm Mut. Auto. Ins. Co.,* 297 Ill.App.3d 1062, 232 Ill.Dec. 172, 697 N.E.2d 914 (1998) (court allowed insurer to assert subrogation claim against insured under a separate policy); *Maynard v. State Farm Mut. Auto. Ins. Co.,* 902 P.2d

---

1. We note that a certificate of coverage in the record shows that Oaks's policy had liability limits of $50,000 per person and $100,000 per accident. The $53,000 in damages awarded to Perkins at trial exceeds the $50,000 per person limit. However, State Farm paid the entire judgment under Oaks's policy, and neither party asserts that the dump truck was underinsured under the terms of Perkins's policy.

1328 (Alaska 1995) (court allowed insurer reimbursement of medical expenses paid to insured under one policy from a different insured under a separate policy). Following the reasoning of these courts, we hold that the antisubrogation rule does not bar State Farm's rights to subrogation and reimbursement against its insured, Oaks.

■ Perkins argues that the trial court did not err in striking State Farm's intervention because the trial court may have concluded that the made whole and common fund doctrines precluded any recovery by State Farm. In general, an insurer's right of subrogation may not be exercised until the insured has been made whole. *Ortiz v. Great S. Fire and Cas. Ins. Co.*, 597 S.W.2d 342, 343 (Tex.1980); *Esparza v. Scott and White Health Plan*, 909 S.W.2d 548, 552 (Tex.App.-Austin 1995, writ denied). Under the made whole doctrine, an insurer is not entitled to subrogation if the insured's loss is in excess of the amounts recovered from the insurer and the third party covering the loss. *Ortiz*, 597 S.W.2d at 344; *Rosa's Cafe, Inc. v. Wilkerson*, 183 S.W.3d 482, 488 (Tex.App.-Eastland 2005, no pet.).

■ Perkins asserts that the jury award of $53,000 in her case against Oaks did not fully compensate her for her injuries. She claims that her injuries far exceeded the amount of compensation awarded by the jury. Therefore, she asserts that the trial court could have concluded that she was not made whole by her judgment against Oaks. The parties have not cited, nor have we found, any Texas cases construing Texas subrogation law in which an insured argued that it was not made whole by a judgment. However, courts in other states considering the issue have held that a jury verdict constitutes a full recovery for the purposes of the made whole doctrine. *See Tampa Port Auth. v. M/V Duchess*, 65 F.Supp.2d 1299, 1301–02 (M.D.Fla.1997); *Bartunek v. Geo. A. Hormel & Co.*, 2 Neb.App. 598, 513 N.W.2d 545, 554 (1994); *United Pac. Ins. Co. v. Boyd*, 34 Wash.App. 372, 661 P.2d 987, 990 (1983). These courts explained that a jury verdict on the issue of damages determines the amount of money necessary to make an insured whole. When the issue of damages has been fully litigated before a jury, an insured is collaterally estopped from denying that he was made whole by the jury verdict. *Tampa Port Auth.*, 65 F.Supp.2d at 1302; *Bartunek*, 513 N.W.2d at 554; *Boyd*, 661 P.2d at 990. Based on the sound reasoning of these courts, we conclude that the jury's verdict awarding $53,000 to Perkins determined the amount of money necessary to make Perkins whole. The made whole doctrine does not preclude State Farm from recovering subrogation or reimbursement.

■ The object of subrogation is to prevent the insured from receiving a double recovery. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 133 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 541 (Tex. App.-Corpus Christi 1993, writ denied). The trial court's judgment awarded the amount of $53,000 in personal injury damages to Perkins. Perkins has already received the entire judgment amount from State Farm. First, State Farm paid $25,000 in UM benefits to Perkins. Later, State Farm paid the balance of the judgment to Perkins from the proceeds of Oaks's liability policy. Pursuant to a trial court order, State Farm deposited $25,000 into the registry of the court pending determination of State Farm's subrogation claim. If State Farm is denied subrogation or reimbursement, Perkins will receive a double recovery of some of her damages—$78,000 instead of the $53,000 awarded in the judgment.

Perkins argues that, in the event State Farm recovers subrogation, the common fund doctrine requires State Farm to share in the attorney's fees and expenses that she incurred in obtaining the judgment against Oaks. The common fund doctrine is based on the following principle:

> [O]ne who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses, including a reasonable attorney's fee.

*Knebel v. Capital Nat'l Bank in Austin,* 518 S.W.2d 795, 799 (Tex.1974) (quoting *Brand v. Denson,* 81 S.W.2d 111, 112 (Tex. Civ.App.-Austin 1935, writ dism'd)). The common fund doctrine applies in the context of insurance subrogation actions. *See Tex. Farmers Ins. Co. v. Seals,* 948 S.W.2d 532, 533–34 (Tex.App.-Fort Worth 1997, no writ). Thus, an insurer that does not assist in the insured's collection of damages from a third party must pay its share of the costs and expenses incurred in obtaining the recovery from the third party, including attorney's fees. *Ortiz,* 597 S.W.2d at 344; *Seals,* 948 S.W.2d at 532; *Lancer Corp. v. Murillo,* 909 S.W.2d 122, 128 (Tex.App.-San Antonio 1995, no writ).

Perkins asserts that State Farm did not assist in obtaining or collecting her judgment against Oaks other than filing its plea in intervention. However, the record does not contain any evidence indicating whether or not State Farm assisted in obtaining the judgment. Nor does the record indicate that the trial court considered this issue. In light of our holding that State Farm is entitled to recover subrogation and reimbursement, we remand this cause to the trial court for it to determine the issues presented by the common fund doctrine.

*This Court's Ruling*

State Farm is entitled to receive subrogation or reimbursement for the UM benefits it paid to Perkins under her policy from the proceeds of Oaks's liability policy. Therefore, the trial court abused its discretion in striking State Farm's plea in intervention. We sustain State Farm's issues. We reverse the trial court's order striking State Farm's intervention and remand this cause to the trial court for proceedings consistent with this opinion.