771 N.W.2d 196 (2009)
17 Neb. App. 766
STATE of Nebraska, appellee,
v.
Kevin A. SIMNICK, appellant.
No. A-08-959.
Court of Appeals of Nebraska.
July 21, 2009.
*201 Dennis R. Keefe, Lancaster County Public Defender, Webb E. Bancroft, and Yohance L. Christie, Senior Certified Law Student, for appellant.
Jon Bruning, Attorney General, and Kimberly A. Klein, Lincoln, for appellee.
INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
SIEVERS, Judge.
By an information filed October 5, 2007, in the district court for Lancaster *202 County, Nebraska, Kevin A. Simnick was charged with count I, first degree sexual assault of a child, see Neb.Rev.Stat. § 28-319.01 (Reissue 2008), a Class IB felony, and with count II, first degree sexual assault on a child, see Neb.Rev.Stat. § 28-319 (Reissue 2008), a Class II felony. Although there were various pretrial and preplea matters, we will not detail such except to the extent necessary to address the issues presented by this appeal.
On June 16, 2008, Simnick entered a no contest plea to count II in exchange for dismissal of count I and the written agreement of the Scotts Bluff County Attorney not to prosecute a potential offense involving the same child in that jurisdiction. On August 11, the matter came before the district court for sentencing, at which time the court imposed a sentence of 20 to 35 years' incarceration. Additionally, the court found the offense made Simnick subject to Nebraska's Sex Offender Registration Act (SORA). The court further found that count II was an aggravated offense as defined in Neb.Rev.Stat. § 29-4005 (Reissue 2008) and that therefore, Simnick was required to register under SORA for the remainder of his life. Simnick has timely appealed.
The parties have completed briefing, and under Neb. Ct. R.App. P. § 2-111(E)(5)(a), the cause is submitted for decision without oral argument.

FACTUAL BACKGROUND
The victim, A.M., was born October 24, 1996, and she was the daughter of Simnick's wife. The child reported a number of instances of sexual abuse, and Simnick admitted to police that he had penetrated A.M.'s vagina with his penis, which occurred when A.M. was less than 12 years of age and living in Lancaster County.

ASSIGNMENTS OF ERROR
Simnick asserts seven assignments of error, which are as follows: (1) The district court erred in denying his counsel's motion to withdraw; (2) the district court erred in accepting the no contest plea, because it was not entered into freely, voluntarily, knowingly, and intelligently; (3) the district court erred in failing to inform him regarding the nature of the charge to which he entered a plea; (4) he received ineffective assistance of counsel; (5) the district court erred in determining that the offense was an aggravated offense for purposes of SORA; (6) the district court erred in determining that he was "subject to lifetime parole pursuant to Neb.Rev.Stat. § 83-174.03, as such statute violates the ex post facto clause"; and (7) the sentence imposed was excessive.

STANDARD OF REVIEW
We will set forth the particular standard of review applicable to each assignment of error in our discussion thereof.

ANALYSIS

Denial of Trial Counsel's Motion to Withdraw.
Simnick's trial counsel filed a motion to withdraw approximately 3½ months after the information was filed in district court. The motion asserted that Simnick was unable to pay the remaining attorney fees necessary for counsel to proceed, nor could he pay for expert witnesses that may be necessary. When the district court took up the motion, counsel also asserted that Simnick would be unable to pay for discovery depositions. The district court denied the motion, commenting that in the district court, there has been reluctance "to allow attorneys to withdraw in criminal cases because of the fact that the appropriate financial arrangements were not made initially," and that there was an obligation on *203 the part of counsel when becoming involved in a case to make financial arrangements at the time of the involvement. The court did indicate that if appropriate, the court might authorize expenses from the county. Accordingly, trial counsel proceeded through sentencing, and then the district court appointed a public defender for this appeal.
Simnick argues that "[i]t is clearly an abuse of discretion to fail to determine what financial arrangements have been made, what resources are left, and what potential expenses are left to be incurred to ensure that a criminal defendant receives, in all stages of his or her case, effective assistance of counsel." Brief for appellant at 15. No authority for this proposition is cited, and we know of none, at least when the trial court does not have before it a motion to proceed in forma pauperis and a poverty affidavit, which it did not in this instance. Accordingly, we reject the proposition quoted above because, as stated, it is without supporting authority and it is clearly overly broad.
Simnick also argues that the financial interests of the attorney and those of the defendant were conflicting and that as a result, counsel had a conflict of interest. Thus, Simnick argues that the trial court should have employed its broad discretion in determining whether a conflict warranting disqualification of counsel existed, citing State v. El-Tabech, 225 Neb. 395, 405 N.W.2d 585 (1987). El-Tabech is not very helpful to Simnick, because it involved a defendant's claim of error when the trial court disqualified his counsel. The Nebraska Supreme Court in El-Tabech pointed out that while a criminal defendant has a Sixth Amendment right to effective assistance of counsel, when counsel is court appointed, the defendant does not have a constitutional right to counsel of his choice. In this instance, Simnick chose his trial attorney, and there was no indication in the record that he wanted a different attorney. The trial court simply denied trial counsel's motion to withdraw, which was premised solely on the representation of trial counsel that his client was unable to pay fees or costs of defense that might be incurred. No showing by affidavit of Simnick's financial status at that time was made. Simnick's assertion in his brief that it was an abuse of discretion to deny the motion to withdraw "without holding an evidentiary hearing to determine the resources available to [Simnick]" rings somewhat hollow, given the failure of Simnick, and by extension his trial counsel, to make any evidentiary showing in support of the motion. Brief for appellant at 16.
Additionally, a claim of error in denying an attorney's motion to withdraw as counsel, as opposed to the defendant's request for such relief, can only be characterized as unique. With respect to the applicable standard of review, we hold that our review of the trial court's decision is for an abuse of discretion by analogy to similar issues. See State v. McPhail, 228 Neb. 117, 421 N.W.2d 443 (1988) (trial court's denial of defendant's motion to dismiss his court-appointed counsel and to appoint substitute counsel is reviewed on abuse of discretion standard).
The State directs us to authority that courts generally presume that counsel will subordinate his or her pecuniary interests in order to honor his or her professional responsibility to a client. See Caderno v. U.S., 256 F.3d 1213 (11th Cir.2001). Any other rule would potentially create havoc in our criminal justice system, and use of this presumption does not foreclose a showing of an actual conflictwhich is completely absent here.
Accordingly, reviewing this matter for an abuse of discretion, we do not find any *204 conflict of interest on this record to require the court to disqualify trial counsel, nor did the trial court abuse its discretion in denying trial counsel's request that he be allowed to withdraw. This assignment of error is without merit.

Was Simnick's No Contest Plea Entered Voluntarily?
Simnick asserts that the trial court erred in advising him of the consequences of his plea and that as a result, the plea was not entered freely, voluntarily, knowingly, and intelligently. The specific shortcoming alleged in the advisory to Simnick before the acceptance of his plea was that he was not advised by the court that the charge to which he was pleading would subject him to lifetime SORA registration.
Simnick argues that the legal underpinning for the necessity of such an advisement derives from State v. Irish, 223 Neb. 814, 394 N.W.2d 879 (1986), where the Nebraska Supreme Court set forth a number of preconditions by way of advisements to the defendant that must occur before the plea is valid and voluntary. In Irish, one of those preconditions is that the "defendant knew the range of penalties for the crime with which he or she is charged." 223 Neb. at 820, 394 N.W.2d at 883.
Simnick acknowledges that in State v. Schneider, 263 Neb. 318, 640 N.W.2d 8 (2002), the court concluded that the trial court's failure to advise the defendant of the registration requirements of SORA did not render the no contest plea involuntary or unintelligent. In so concluding, the Schneider court relied upon State v. Torres, 254 Neb. 91, 574 N.W.2d 153 (1998), which held that SORA registration requirements are collateral consequences and that thus, the trial court is not required to inform the defendant of such collateral consequences before accepting a plea of no contest. State v. Worm, 268 Neb. 74, 680 N.W.2d 151 (2004), involved a case in which James Worm, rather than being subject to the 10-year registration requirement as in Schneider, was subject to the lifetime registration requirement associated with an aggravated offense. The court pointed out that Worm's lifetime SORA registration did not arise solely and independently from his conviction, but, rather, from the fact that the trial court had been required, as part of the sentence, to determine whether the offense was aggravated, and that thus, such finding was part of the trial court's judgment.
Accordingly, in Worm, the Nebraska Supreme Court determined that because the finding that the offense was aggravated was part of the judgment for purposes of an appeal, the constitutional challenge to SORA on the merits was ripe for appellate review. However, the court did find that Worm's constitutional challenge to SORA's notification provisions was not yet ripe for appellate review, and in discussing the possibility of a high-risk assessment for persons who have committed an aggravated offense, the court noted that the Nebraska State Patrol is to assess a registrant based on many factors, including the offender's response to treatment and behavior while confined. Thus, in Worm's case, because he was still incarcerated, this assessment had not been made, nor had the State Patrol assigned a notification level. Worm further argued that the finding that he had committed an aggravated offense violated the ex post facto clause, because an aggravated offense and its attendant consequences did not exist when he committed the registrable offense. Worm further argued that the ex post facto clause was violated because the legislative amendment establishing "aggravated offenses" resulting in lifetime registration is punitive, given *205 that he must register for life, rather than 10 years. After a comprehensive analysis of various factors that we will not set forth here, the Worm court found that the Legislature's civil regulatory scheme to protect the public from the danger imposed by sex offenders, including lifetime registration for aggravated offenses, was not intended to be punitive.
The Worm court also analyzed the question of whether the effect of the lifetime registration requirement was so punitive as to negate the Legislature's intent. The Worm court answered that question in the negative. Thus, because the Worm court found the lifetime registration requirements not to be punitive, we conclude that the advisement of such is not required by State v. Irish, 223 Neb. 814, 394 N.W.2d 879 (1986), which requires the defendant to know the range of penalties for the crime with which he is charged. In short, being subject to lifetime registration is not part of the potential penalties about which a criminal defendant must be advised under Irish, supra, in order for the plea to be deemed voluntary and valid. That being said, at the time of the taking of Simnick's plea of no contest during the arraignment process on the amended information, the prosecutor described the statutory range of incarceration as 1 to 50 years, said that Simnick could be ordered to pay restitution, and told Simnick that he "would be subjected to [SORA,] which would require a lifetime registration." Simnick was then asked if he understood "the charge and the possible penalty," to which he responded, "Yes, I do." Accordingly, although under State v. Worm, 268 Neb. 74, 680 N.W.2d 151 (2004), advisement of the possibility of lifetime registration is not required to satisfy Irish, supra, Simnick cannot now claim that he was not aware of, and had not been advised about, lifetime registration. This assignment of error is without merit.

Was Simnick Improperly Advised of Nature of Charges to Which He Was Pleading?
Citing Irish, supra, again, Simnick argues that there was no adequate advisement regarding the nature of the charges and that the record did not reveal his understanding thereof. Although without direct citation of authority, Simnick more specifically asserts that the district court was required to have made inquiry "and determine[d] that [Simnick] understood the material elements of the offense that the [S]tate must prove beyond a reasonable doubt to convict him." Brief for appellant at 28. We are not persuaded. First, this is not required by Irish, supra. In any event, it seems rather elementary that the recitation of the charged offense during the plea hearing does in fact include advisement of the elements that the State must prove. We have found no authority requiring advisement of each and every element that must be proved by the State. Rather, Irish, supra, holds simply that the court must inform the defendant concerning "the nature of the charge" and that the record must show the defendant understands such. Here, the record reveals that during the plea hearing, after amendment of the charges pursuant to the plea agreement, Simnick was told by the county attorney that the amended information
charges you with first-degree sexual assault, a Class II felony.
It does allege that on, about, or between January 1, 2003, and July 31, 2006, in Lancaster County, Nebraska, you did, being a person nineteen years of age or older, subject A.M., otherwise known as [A.M.], date of birth October [2]4, 1996, and thus a person less than *206 sixteen years of age, to sexual penetration.
After an extensive examination of factors bearing on Simnick's ability to understand, such as medications being taken, education level, and work history, as well as full and complete advisement of the various rights possessed and protected during a trial that are being surrendered by entering a plea, the court asked: "Do you have any questions about the charge itself?" Simnick responded: "No, Your Honor." The court also inquired as to whether Simnick had had sufficient time to discuss the matter with counsel and offered him additional time to do so. Significantly, the court advised Simnick that he was "presumed to be innocent ... and that presumption ... would continue ... throughout a trial until the State would prove you guilty beyond a reasonable doubt. By pleading no contest, you are waiving and not having that presumption of innocence in your favor. Do you understand that?" Simnick responded affirmatively. This assignment of error has no merit.

Simnick's Claims of Denial of Effective Assistance of Counsel.
Simnick claims seven instances of denial of effective assistance of counsel. The law is clear that claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. State v. Brown, 268 Neb. 943, 689 N.W.2d 347 (2004). When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. Id.
The following five claims of ineffective assistance of counsel are obviously not ripe for review on direct appeal, because the record simply is lacking information, particularly from trial counsel, upon which to determine such claims:
 Trial counsel did not prepare to defend the case.
 Trial counsel never informed Simnick of the lifetime parole supervision under Neb.Rev.Stat. § 83-174.03 (Reissue 2008) prior to the plea.
 Trial counsel never informed Simnick of his obligation to submit to a civil commitment evaluation under Neb. Rev.Stat. § 29-4018 (Reissue 2008) before he would be released from incarceration.
 Trial counsel failed to move to withdraw Simnick's plea prior to sentencing after being advised that the court had found the offense to be an aggravated offense.
 Trial counsel failed to inform Simnick of the consequences of entering his plea of no contest.
The foregoing matters fundamentally involve attorney-client communications and what counsel did or did not do in investigating and preparing any potential defenses to the charges, as well as the considerations involved in pleading to one count of the information rather than proceeding to trial. Resolution of such claims requires factual allegations, rather than the conclusionary claims set forth in Simnick's brief, and then supporting evidence for such claims. For these reasons, the five claims of ineffectiveness of counsel listed above cannot be reviewed on direct appeal, and we discuss them no further.
Next, Simnick alleges that at the hearing on the motion to suppress, his trial counsel failed to adduce expert testimony regarding sleep deprivation, although counsel indicated at the time of the motion to withdraw that an expert witness on such issue may be necessary. The *207 record does not reveal whether any expert on sleep deprivation could or would have testified that Simnick was sleep deprived at the time of his incriminating statement to the police so as to render such statement involuntary and therefore inadmissible. Without such evidence, the claim cannot be considered in this direct appeal.
The final claim that counsel was ineffective is that he failed to object to the State's request and the court's determination that the offense for which Simnick was convicted was an aggravated offense. Nebraska follows the two-prong test for determination of the question of whether a criminal defendant received ineffective assistance of counsel. The first prong is whether counsel performed deficiently, that is, counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area; and the second is whether the deficient performance actually prejudiced the criminal defendant in making his or her defense. See State v. Jackson, 275 Neb. 434, 747 N.W.2d 418 (2008). The prejudice prong requires that the criminal defendant show a reasonable probability that but for counsel's deficient performance, the result of the proceeding in question would have been different. Id. The two-prong test need not be addressed in order. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. State v. Hudson, 277 Neb. 182, 761 N.W.2d 536 (2009). Accordingly, with respect to this particular claim, if the trial court did not err in finding that the offense was an aggravated offense, Simnick could not be prejudiced by a failure to object or otherwise contest the trial court's finding. Because Simnick assigns as a separate error the trial court's finding that the offense was an aggravated offense, a contention we ultimately reject, we now turn to our discussion of that assignment of error. Because, as explained below, the finding of an aggravated offense was correct, Simnick could not have suffered prejudice from any inaction on the part of his trial counsel in this regard. Accordingly, this particular claim of ineffectiveness of counsel is ripe for determination and is adjudicated against Simnick as being without merit.

Was Offense Aggravated Offense for Purposes of SORA?
Simnick argues that the trial court's determination that this offense was an aggravated offense requiring lifetime registration under SORA was incorrect. His argument relies largely upon our decision in State v. Mastne, 15 Neb.App. 280, 725 N.W.2d 862 (2006). The State asserts that if Mastne is correct, then Simnick's assignment of error is well takenbut that the Mastne decision is incorrect. The State's brief also directs us to the pendency of an appeal in the Nebraska Supreme Court which challenges the correctness of our decision in Mastne. That decision, State v. Hamilton, 277 Neb. 593, 763 N.W.2d 731 (2009), was handed down after the parties completed their briefing. Mastne, supra, held that the Legislature did not intend for the trial court to make a factual finding or determination regarding whether an offense is an aggravated offense under § 29-4005(2), but, rather, that the trial court's consideration is limited to whether the statutory elements of the conviction at issue fell within the language of § 29-4005(2) and (4)(a).
The Hamilton court agreed with our reasoning in Mastne that § 29-4005(2) and (3)(a) should be read together, because both relate to lifetime registration for certain sex offenders. However, rejecting the reasoning of Mastne, the Nebraska Supreme Court found:

*208 The use of the word "fact" in the second sentence of § 29-4005(2) read in conjunction with the word "also" in the first sentence of § 29-4005(3)(a) indicates a legislative intent that there be a factual determination by the sentencing judge under both statutory provisions.
Applying the reasoning of Mastne to § 29-4005(2) would, in our view, lead to an absurd result. Sexual penetration is an element in only three of the registrable offenses currently listed in § 29-4003: first degree sexual assault, first degree sexual assault on a child, and incest of a minor. None of these include an element of "use of force or the threat of serious violence," and thus, applying the reasoning of Mastne, only first degree sexual assault of a child as currently defined in § 28-319.01 would meet all requirements for an aggravated offense under § 29-4005(4)(a). However, § 28-319.01 was first enacted in 2006. Prior to that time, the offense of sexual assault of a child did not include penetration as an element. Thus, in 2002, when the Legislature amended SORA to provide a lifetime registration requirement for those committing aggravated offenses, there were no existing offenses with elements strictly corresponding to the definition of an aggravated offense in § 29-4005(4)(a)(ii). This indicates that the Legislature intended the existence of an aggravated offense to be determined on the basis of actual facts, not statutory elements.
Hamilton, 277 Neb. at 601-02, 763 N.W.2d at 737-38. As a result, to this extent, the Supreme Court disapproved the holding of Mastne.
Hamilton is additionally noteworthy because the Supreme Court noted that the factual basis received at the time of the defendant's pleas, as well as "the information included in the presentence investigation report, supports the finding of the district court" that the defendant committed aggravated offenses and that such subjected him to lifetime registration under SORA. 277 Neb. at 602, 763 N.W.2d at 738.
Obviously, Hamilton, supra, eviscerates Simnick's argument premised on Mastne. Thus, the only question for us in this case is simply whether the factual basis and the presentence investigation report (PSR) support the trial court's finding of an aggravated offense, which is defined by § 29-4005(4)(a) as "any registrable offense under section 29-4003 which involves the penetration of (i) a victim age twelve years or more through the use of force or the threat of serious violence or (ii) a victim under the age of twelve years." The first element, a conviction of a registrable offense, is clearly satisfied. See Neb.Rev.Stat. § 29-4003 (Reissue 2008). The other two elements necessary for a finding that this was an aggravated offense, penetration and a victim under age 12, are a bit more nuanced, given that this case involves a no contest plea. The rule is that the difference between a plea of nolo contendere and a plea of guilty is that while the latter is a confession or admission of guilt binding the accused in other proceedings, the former has no effect beyond the particular case. See State v. Wiemer, 15 Neb.App. 260, 725 N.W.2d 416 (2006). In State v. Worm, 268 Neb. 74, 80, 680 N.W.2d 151, 158 (2004), the Supreme Court held that "the registration requirement for an offender convicted of an aggravated offense under [SORA's] amended provisions is part of the sentencing court's judgment for purposes of filing an appeal." The charge, as stated at the plea hearing, was that Simnick had subjected A.M., who was under age 16 between the dates of January 1, 2003, and *209 July 31, 2006, and had a birth date of October 24, 1996, to "sexual penetration."
State v. Hamilton, 277 Neb. 593, 763 N.W.2d 731 (2009), clearly allows the factual predicates for lifetime SORA registration to come from the factual basis recited at the time of the plea and the PSR. According to the factual basis and the PSR, A.M. was under the age of 12 during the timeframe encompassed by the charge. Turning to the matter of penetration, such is described by Neb.Rev.Stat. § 28-318(6) (Reissue 2008) as
sexual intercourse in its ordinary meaning... or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration shall not require emission of semen.
The PSR reveals ample evidence of penetration, as statutorily defined, on at least two occasions while A.M. was under age 12. The PSR reveals that A.M. related to investigators that Simnick had put his "personal thing" into her "personal thing," and she identified her meaning of such terms through anatomical diagrams and her own drawings, including her drawing of a penis on which she indicated how far Simnick's penis had penetrated her vagina. Simnick's own statement to police, also found in the PSR, admits penetrating A.M.'s vagina with his penis during the course of "tickling and wrestling." He further admits that under the guise of showing her how to cleanse herself, he used his hands to spread her vulva and sprayed a hand-held shower head in that area and that he "may" have touched her vagina with it. There is little question after review of the voluminous PSR that penetration as statutorily defined occurred.
Accordingly, the predicates for a finding that the offense is an aggravated offense under § 29-4005(4)(a) are present, and thus, the trial court did not err in finding that the offense was aggravated.

Did District Court Err in Ordering That Simnick Is Subject to Lifetime Community Supervision Upon His Release From Incarceration or Civil Commitment?
Simnick argues that the district court's order pursuant to § 83-174.03 that upon his release from incarceration or civil commitment he be subject to lifetime community supervision by the Office of Parole Administration is error because "such statute violates the ex post facto clause." In support of this argument, Simnick cites us to State v. Worm, 268 Neb. 74, 82, 680 N.W.2d 151, 159 (2004), where the court held that "[a] law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed, is an ex post facto law and will not be endorsed by the courts." The Worm court determined that the lifetime registration requirements of SORA did not impose a criminal punishment, and thus Worm's constitutional challenge based on due process and the ex post facto clause failed. However, the assignment of error now under discussion in the instant case involves the lifetime community supervision required for aggravated sexual offenses under § 83-174.03, and since the parties completed their briefing, the Nebraska Supreme Court has decided State v. Payan, 277 Neb. 663, 765 N.W.2d 192 (2009).
Payan is directly and significantly applicable to this case. Abram Payan was convicted by a jury of first degree sexual assault, and then the trial judge made a *210 finding that the offense was an aggravated offense, making him subject to lifetime registration under SORA as well as lifetime community supervision under § 83-174.03. In his appeal, Payan contended that the trial court erred in determining that he had committed an aggravated offense. The State alleged that Payan committed oral and anal penetration of C.N., a 14-year-old female, using a knife and threats to kill her if she did not comply with his instructions. The Supreme Court noted:
The jury heard two distinct versions of the facts. C.N. and one eyewitness testified that the assault occurred after Payan displayed a knife and threatened to kill C.N. if she did not submit to his sexual advances. Payan and one other witness testified that the assault never occurred.
Payan, 277 Neb. at 677, 765 N.W.2d at 204.
The key issue was Payan's contention that the factual finding of an aggravated offense must be made by a jury, citing Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), rather than by the court, as was done in Apprendiand as was done in Simnick's case. Apprendi holds that legislatures cannot remove from the jury the task of assessing facts which could increase the range of penalties to which a criminal defendant is exposed, and that such enhancing facts must be found to exist beyond a reasonable doubt. The U.S. Supreme Court later held in Blakely v. Washington, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), that under Apprendi, the statutory maximum is the maximum sentence a judge may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Emphasis omitted.) As a result, the Payan court turned to the question of whether lifetime registration and lifetime community supervision are punitive, and thus enhancing penalties to which Apprendi applies.
The Payan court reiterated its holding in Worm, supra, that lifetime registration under SORA is not punitive and that therefore, the constitutional principles of Apprendi and Blakely were not applicable to such. However, citing authority from other jurisdictions that had considered the issue, and equating lifetime community supervision to "parole," the Payan court held that the Legislature's intent in providing for lifetime community supervision under § 83-174.03 was to establish an additional form of punishment for certain sex offenders. As a result, the court held:
In this case, the imposition of lifetime community supervision was triggered by the finding of the trial judge, not the jury, that Payan had committed an aggravated offense as defined by SORA. This constitutes error under Apprendi and Blakely, because the punishment imposed on the basis of this finding is beyond that which would have been permissible on the basis of the jury verdict alone, i.e., imprisonment for a maximum of 50 years. We hold that where the facts necessary to establish an aggravated offense as defined by SORA are not specifically included in the elements of the offense of which the defendant is convicted, such facts must be specifically found by the jury in order to impose lifetime community supervision under § 83-174.03 as a term of the sentence.
State v. Payan, 277 Neb. 663, 675-76, 765 N.W.2d 192, 204 (2009).
In Payan's case, the trial court therefore erred in making the finding that the offense was aggravated, which, given that the victim was older than age 12, had to be based on penetration through the use of force or the threat of serious violence. *211 Nonetheless, recalling that most constitutional errors can be harmless, and citing the U.S. Supreme Court's holding in Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), that an Apprendi/Blakely error in failing to submit a sentencing factor to the jury is not structural error and is subject to a harmless error analysis, the Nebraska Supreme Court did a harmless error analysis in Payan. The court defined the standard for such analysis as follows: "We hold that the appropriate harmless error standard in this circumstance is whether the record demonstrates beyond a reasonable doubt that a rational jury would have found the existence of the sentencing enhancement factor." Payan, 277 Neb. at 676, 765 N.W.2d at 204.
We referenced earlier the fact that the Payan jury heard two different material versions of the events. In the State's evidence, the victim and a witness testified that the victim was sexually assaulted as result of threats of death with a knife. In Payan's defense, he and his supporting witness claimed that no assault took place whatsoever. Therefore, the Payan court found there was no evidence that if the assault occurred, it was done without violence or the threat thereof. Accordingly, the Payan court concluded:
On this record, any rational jury which convicted Payan of the sexual assault would have also concluded that it was committed through the use of force or the threat of serious violence. Accordingly, we conclude that the making of this finding by the trial judge instead of the jury was harmless error.
277 Neb. at 677, 765 N.W.2d at 204-05.
When we apply Payan to Simnick's challenge to the requirement that he is subject, by operation of § 83-174.03, to lifetime community supervision upon his release from incarceration, there are two glaring differences. First, Simnick pled no contest to the charge, and second, his exposure to a finding of an aggravated offense flows from an immutable fact, that A.M. was under age 12 at the time of the offense. These differences are important, because while a criminal defendant can plead to the underlying charge, and still have a jury trial on penalty-enhancing facts, that is not true if there is a plea which admits the enhancing facts. See Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Blakely holds that the maximum statutory sentence for the purposes of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), is the maximum which the judge can impose based on facts admitted in the guilty plea. Here, there is a no contest plea, but as discussed earlier, the facts admitted via a no contest plea can be used only in the proceeding involving the no contest plea. And because under State v. Worm, 268 Neb. 74, 680 N.W.2d 151 (2004), lifetime community supervision is part of the judgment and sentence, it is clear that what Simnick admitted by his no contest plea can be used in determining whether he is subject to lifetime community supervision.
There are two factual admissions necessarily included in his pleathat he sexually penetrated A.M. and that, at the time, she was under 16 years of age. However, Simnick's plea did not admit that A.M. was under 12 years of age at the time he sexually penetrated her. Accordingly, Simnick was entitled to an Apprendi "mini trial" to a jury on whether the offense to which he pled no contest was an aggravated offense.
It is clear under State v. Payan, 277 Neb. 663, 765 N.W.2d 192 (2009), that the failure to have a jury decide a factual question to support the imposition *212 of lifetime community supervision is subject to harmless error analysis. Here, the record demonstrates beyond a reasonable doubt that any rational jury would have found the existence of the sentencing enhancement factor, i.e., that A.M. was under the age of 12 at the times of the offense. Based on A.M.'s recited date of birth, which was never disputed at any time, no rational jury could conclude that she was anything but under 12 years of age at the times of the offense.
Finally, Simnick challenges lifetime community supervision as a violation of the ex post facto clause. In this regard, State v. Schreiner, 276 Neb. 393, 754 N.W.2d 742 (2008), informs our decision. Paul Schreiner was convicted of first degree sexual assault on a child, based on a sexual encounter that occurred with K.G., a 14-year-old girl, when Schreiner was 22 years old; but unlike Payan and the instant case, the offense was not an aggravated offense. Schreiner was convicted after a jury trial, and in addition to his sentence of 6 to 9 years' imprisonment, he was given a "`Notice of Lifetime Parole Supervision"' informing him that he was subject to lifetime community supervision by the Office of Parole Administration. Id. at 398, 754 N.W.2d at 750. Schreiner assigned as error the finding that he was subject to lifetime community supervision under § 83-174.03, because such statute was an ex post facto law and violated his right of due process. The Schreiner court first said that the issue presented a question of law, on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. We apply that standard of review here.
After noting that Schreiner argued the application of § 83-174.03(1) to him was unconstitutional, the court noted that the initial question was whether the issue was properly before the court upon direct appeal. The Schreiner court noted its decision in Worm, supra, which found that lifetime SORA registration was part of the sentence and that such was subject to challenge on direct appeal.
The Schreiner court then noted Schreiner was "automatically" subject to § 83-174.03 because he had been previously convicted of an offense requiring registration under § 29-4003. 276 Neb. at 423, 754 N.W.2d at 765. The Schreiner court found that the operation of § 83-174.03 was "entirely independent from the sentence imposed upon Schreiner" for first degree sexual assault, id., and that as such, any claim Schreiner might have concerning the constitutional implications of § 83-174.03
should be raised if and when he becomes subject to its provisions, but not on a direct appeal from his underlying sexual assault conviction. Any individual who is subject to lifetime community supervision may, whenever a determination or revision of the conditions of community supervision is made, appeal to the district court.
Schreiner, 276 Neb. at 423-24, 754 N.W.2d at 765-66.
The Schreiner court also cited prudential reasons for finding that Schreiner's challenge was unripe. The court said that while the provisions of SORA are mandatory, the effects of lifetime community supervision are uncertain until the defendant is released from incarceration. The court noted that while conditions of community supervision are imposed to best protect the public from the risk of reoffense, those conditions are based on the risk assessment made at the time of release and can be rather onerous, up to and including electronic monitoring. But, there is no requirement that the Office of Parole Supervision monitor the defendant at all. Thus, the Schreiner court said that the *213 uncertainty of whether the defendant will in fact be affected at all by the provisions of lifetime community supervision counsels against weighing their constitutionality before their effects are known. In conclusion, the court found that because the issues were not ripe, Schreiner was under no obligation to object on that basis in the district court and had not waived his constitutional claims "if and when they become ripe." State v. Schreiner, 276 Neb. 393, 424, 754 N.W.2d 742, 766 (2008). Thus, the court did not consider the ex post facto clause challenge to the application of § 83-174.03 to Schreiner.
Therefore, under Schreiner, we need not examine or comment on the State's assertions in this direct appeal, given that Simnick's constitutional challenge is unripe. We do note for the sake of completeness that this court cannot determine the constitutionality of a statute, yet when necessary to a decision in a case before us, we do have jurisdiction to determine whether a constitutional challenge has properly been raised. See Bartunek v. Geo. A. Hormel & Co., 2 Neb.App. 598, 513 N.W.2d 545 (1994). Although it appears that Simnick's challenge is to the application of § 83-174.03 to him, rather than the unconstitutionality of the statute, in any event, we determine, consistent with Bartunek, that the challenge is prematurely raised in accord with Schreiner, supra.

Did Trial Court Impose Excessive Sentence?
The law is well established that an appellate court will not disturb sentences that are within statutory limits, unless the district court abused its discretion in establishing the sentences. State v. Decker, 261 Neb. 382, 622 N.W.2d 903 (2001). Simnick was sentenced to 20 to 35 years' incarceration. While there is considerable positive information in the PSR, such as his education, work history, and lack of a criminal record, the offense here was committed against his wife's child. As the child's stepfather, he was in a position of trust that he violated in the worst way. Although the sentence is substantial, it is within the statutory limits, and considering good time, he actually could be released in 10 years. Such a sentence is not an abuse of discretion.

CONCLUSION
Although we did not hear oral argument in this case, we have fully considered the extensive briefing of the parties, the applicable authority, including that released since the parties' briefs were filed, as well as the trial court record. We find that all but one of Simnick's assignments of error are without merit. We conclude that the finding that Simnick committed an aggravated offense for the purpose of lifetime community supervision should have been submitted to a jury, but that this error was harmless. Therefore, we affirm the conviction and sentence.
AFFIRMED.