779 N.W.2d 335 (2010)
279 Neb. 499
STATE of Nebraska, appellee,
v.
Kevin A. SIMNICK, appellant.
No. S-08-959.
Supreme Court of Nebraska.
March 5, 2010.
*337 Dennis R. Keefe, Lancaster County Public Defender, Webb E. Bancroft, and Yohance L. Christie, Senior Certified Law Student, for appellant.
Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
After entering a plea of no contest, Kevin A. Simnick was convicted on one count of first degree sexual assault and sentenced to a term of incarceration. In its sentencing order, the district court determined that Simnick had committed an "aggravated offense" as defined in Neb.Rev. Stat. § 29-4005 (Reissue 2008). Simnick was, therefore, subject to the lifetime registration requirements of the Sex Offender Registration Act (SORA)[1] and to lifetime community supervision[2] upon his release from incarceration or civil commitment. The Nebraska Court of Appeals affirmed the conviction and sentence.[3] We granted Simnick's petition for further review to consider issues arising from State v. Payan,[4] decided during the pendency of Simnick's appeal, in which we held that lifetime community supervision constituted a form of punishment.

BACKGROUND
In October 2007, Simnick was charged by information in the district court for Lancaster County with two counts of sexual assault of a child in the first degree. He entered not guilty pleas to both charges.
Eventually, a plea agreement was reached. One of the counts in the information was amended to allege the offense of first degree sexual assault.[5] Simnick, appearing with counsel, entered a plea of no contest to this amended count in exchange for the Lancaster County Attorney's agreement to dismiss the remaining count and the Scotts Bluff County Attorney's agreement not to prosecute Simnick for an offense involving the same child in that jurisdiction. The amended information *338 alleged that the offense occurred "on, about, or between January 1, 2003 and July 31, 2006," in Lancaster County, that Simnick was a person 19 years of age or older, and that he subjected a person less than 16 years of age to sexual penetration. The State presented a factual basis for the plea which included a transcribed statement which Simnick gave to Lincoln police on August 27, 2007. The court advised Simnick of the nature of the charge against him and of the possibility of the following penalties: incarceration for a period of 1 to 50 years, restitution paid to the victim, and lifetime registration as a sex offender. The court did not inform Simnick of the possibility of lifetime community supervision under § 83-174.03(1).
On August 11, 2008, Simnick appeared with counsel for sentencing. Simnick acknowledged reading and signing the "Notice and Acknowledgment of Lifetime Parole Supervision" form, which advised him that he would be subject to lifetime community supervision by the Office of Parole Administration. Simnick neither questioned nor objected to the notice. The district court found that Simnick had committed an "aggravated offense" as defined in § 29-4005 and imposed a sentence of incarceration for 20 to 35 years, with credit for time served. As a part of the sentence, the court found that Simnick was required to register under SORA for the remainder of his life and that Simnick would be subject to lifetime community supervision by the Office of Parole Administration upon his release from either incarceration or civil commitment.
Simnick filed a timely appeal of his conviction. He asserted, inter alia, (1) that his plea was involuntary because the district court did not advise him of the possibility of lifetime community supervision and (2) that the inclusion of lifetime community supervision in his sentence violated the Ex Post Facto Clauses of the state and federal Constitutions. In its appellate brief, the State briefly argued that Simnick waived these arguments by failing to object at his sentencing hearing. The Court of Appeals did not address this argument in its opinion affirming Simnick's conviction and sentence.
After we granted Simnick's petition for further review, the State filed a motion to dismiss as improvidently granted, arguing that the issues were not preserved for appellate review. We deferred ruling on the State's motion pending final submission.

ASSIGNMENTS OF ERROR
In his petition for further review, Simnick assigns, restated, that (1) the imposition of lifetime community supervision violated the Ex Post Facto Clauses of the Nebraska and federal Constitutions and (2) his no contest plea was not freely, knowingly, and voluntarily made.

STANDARD OF REVIEW
The constitutionality of a statute is a question of law, regarding which the Nebraska Supreme Court is obligated to reach a conclusion independent of the determination reached by the trial court.[6]

ANALYSIS
Both U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16, provide that no ex post facto law may be passed. A law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating *339 or enhancing penalties that did not exist when the offense was committed, is an ex post facto law and will not be endorsed by the courts.[7] This court ordinarily construes Nebraska's ex post facto clause to provide no greater protections than those guaranteed by the federal Constitution.[8]
Section 83-174.03, which subjects certain sex offenders to lifetime community supervision, was a part of L.B. 1199,[9] signed by the Governor on April 13, 2006. It went into effect 3 calendar months later, on July 14.[10] In Payan,[11] we held that lifetime community supervision pursuant to § 83-174.03 is a form of punishment. Simnick contends that his offense was committed before the effective date of § 83-174.03 and that therefore, the statute as applied to him constitutes ex post facto legislation because it increased the punishment for his offense after it was committed.

PLAIN ERROR
The State correctly notes that Simnick asserted his ex post facto claim for the first time on appeal. In the absence of plain error, when an issue is raised for the first time in an appellate court, the issue will be disregarded inasmuch as the trial court cannot commit error regarding an issue never presented and submitted for disposition in the trial court.[12] Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[13]
Consideration of plain error occurs at the discretion of an appellate court.[14] We have exercised our discretion to correct plain error in a variety of criminal sentencing contexts, including a case[15] in which capital sentencing was not conducted in accordance with Ring v. Arizona,[16] cases in which prior convictions were utilized to enhance a sentence absent proof in the record that the defendant was represented by or knowingly waived counsel at the time of the prior convictions,[17] and a case in which a defendant convicted of driving under the influence was erroneously ordered to participate in alcohol assessment as a part of the sentencing order.[18]
We have also considered relevant judicial decisions handed down subsequent to trial as a factor in deciding whether to *340 review for plain error.[19] Our holding in Payan[20] that lifetime community supervision is a form of punishment is highly relevant to Simnick's ex post facto claim. Payan was decided while Simnick's appeal was pending in the Court of Appeals. Based upon the constitutional prohibition of ex post facto laws, Simnick has a substantial right not to be subjected to an enhanced penalty that did not exist when his offense was committed. Accordingly, we exercise our discretion to consider his ex post facto argument under the doctrine of plain error.

RIPENESS
A convicted sex offender becomes subject to lifetime community supervision following either completion of a term of incarceration or release from civil commitment under three separate circumstances:
(a) [The defendant] is convicted of or completes a term of incarceration for an offense requiring registration under section 29-4003 and has a previous conviction for a registerable offense, (b) [the defendant] is convicted of sexual assault of a child in the first degree pursuant to section 28-319.01, or (c) [the defendant] is convicted of or completes a term of incarceration for an aggravated offense as defined in section 29-4005.[21]
In State v. Schreiner,[22] we held that an ex post facto challenge by a defendant who had become subject to lifetime community supervision as a result of a prior conviction for a registerable offense was unripe for judicial review. In this case, the Court of Appeals relied upon Schreiner in concluding that "Simnick's constitutional challenge is unripe."[23]
But this case differs from Schreiner in that Simnick became subject to lifetime community supervision not on the basis of a prior conviction, but because the district court found that the offense on which he stands convicted in this proceeding constituted an "aggravated offense" as defined in § 29-4005. Under SORA, a convicted sex offender whose offense is determined to be an "aggravated offense" is also subject to the lifetime registration requirement.[24] In Worm,[25] we determined that a lifetime registration requirement under SORA resulting from a finding of an aggravated offense was "part of the sentencing court's judgment" for purposes of appeal and was, therefore, ripe for review on direct appeal. Worm therefore reached and rejected the ex post facto claim on its merits, concluding that because the registration requirement was not punitive, there was no violation of the Ex Post Facto Clauses.
Here, as in Worm, the challenged portion of the sentence arose from an aggravated offense finding which was made as a part of the sentencing order. Therefore, Worm, not Schreiner, controls the question of whether the constitutional issue is ripe for review. We conclude, under the reasoning of Worm, that the issue is ripe for review and that the Court of Appeals erred in reaching its contrary conclusion.

MERITS
Upon reversing a decision of the Court of Appeals, this court may consider, *341 as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach.[26] In the interest of judicial economy, we address the merits of Simnick's ex post facto claim which the Court of Appeals did not reach.
Because we held in Payan[27] that lifetime community supervision is a form of punishment, the dispositive question is whether Simnick's offense was committed before or after July 14, 2006, the effective date of § 83-174.03. The count in the amended information to which Simnick entered his plea alleged that the offense was committed "on, about, or between January 1, 2003 and July 31, 2006." The State argues that we should treat Simnick's crime as a "continuing offense"[28] spanning this entire time period and conclude that § 83-174.03 is not ex post facto as applied to Simnick.
In support of this argument, the State relies upon State v. Cowles,[29] an Iowa case in which a defendant entered a guilty plea to, inter alia, one felony count of sexual abuse involving a minor child. The offense was alleged to have occurred between the dates of April 9, 1996, and February 2, 1997. A statute establishing a mandatory minimum sentence became effective on July 1, 1996. At the plea hearing, the defendant was asked whether he had engaged in a sex act with the minor "`prior to February 3, 1997,'" and he gave an affirmative response.[30] The Iowa Supreme Court held that application of a statute specifying a mandatory minimum sentence would not constitute ex post facto legislation, because the defendant had "expressly admitted" at his plea and sentencing hearing that he had committed the offense between April 9, 1996, and February 2, 1997.[31] Although the court acknowledged that the defendant did not expressly admit that he committed the offense after the enactment of the mandatory minimum sentence statute, the court nevertheless found "an implicit admission of such conduct in the full context of the hearing."[32]
Federal courts have taken differing approaches to the analysis of a plain error ex post facto claim where a statute which enhances a criminal penalty is enacted during the time period the crime is alleged to have occurred and a jury is not specifically instructed that it must find criminal conduct occurring after the date of enactment. The Ninth Circuit has concluded that a guilty verdict constitutes a finding that the criminal conduct occurred until the most recent date alleged in the indictment, thereby establishing postenactment criminal conduct.[33] The Fifth Circuit has held that where most of the evidence focused on events occurring after the statutory amendment enhancing the penalty for the offense, there is no plain error in failing to give the jury instruction which would prevent ex post facto application.[34] The Second Circuit has found plain error based upon a possibility that the jury could have convicted the defendant exclusively *342 on preenactment conduct.[35]
None of these cases provide guidance here, where there is neither an admission resulting from a guilty plea nor a finding of guilt by a jury. Instead, we have only Simnick's no contest plea and the factual basis for the plea offered by the State, which includes a statement Simnick gave to police on August 27, 2007. In the statement, Simnick admitted to a sexual assault involving penetration occurring 3 to 4 years previously. However, there is no admission or other evidence of conduct occurring during the 18-day period between July 14, 2006, the effective date of § 83-174.03, and July 31, the last day of the time period in which the crime was alleged to have been committed. On this record, we must conclude that the crime was committed before the enactment of the statute which imposed the additional punishment of lifetime community supervision. Accordingly, the inclusion of that punishment in Simnick's sentence violates the Ex Post Facto Clauses of the Nebraska and federal Constitutions.

REMEDY
When part of a sentence is illegal, an appellate court may, if the sentence is divisible, modify it by striking out the illegal part.[36] That portion of Simnick's sentencing order which states that he is subject to lifetime community supervision is divisible from the remainder of the sentence and should be stricken, leaving the remainder of the sentence in force.

OTHER ASSIGNMENT
Simnick also contends that the Court of Appeals erred in determining that his no contest plea was entered voluntarily. He argues that his plea was involuntary because he was not specifically advised that upon conviction, he could be subject to the lifetime community supervision provisions of § 83-174.03. Inasmuch as we have determined that Simnick is not subject to lifetime community supervision because § 83-174.03 was not in effect at the time of his offense, the issue with respect to his plea is moot and we do not address it.

CONCLUSION
For the reasons discussed, we overrule the State's motion to dismiss the petition for further review. We affirm that portion of the judgment of the Court of Appeals affirming Simnick's conviction; but we reverse that portion of the judgment which affirms the sentence of lifetime community supervision by the Office of Parole Administration upon Simnick's release from incarceration or civil commitment, and we remand the cause to the Court of Appeals with directions to vacate that portion of the sentence and remand to the district court with directions to resentence Simnick in accordance with this opinion.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] Neb.Rev.Stat. §§ 29-4001 to 29-4014 (Reissue 2008).
[2] See Neb.Rev.Stat. § 83-174.03 (Reissue 2008).
[3] State v. Simnick, 17 Neb.App. 766, 771 N.W.2d 196 (2009).
[4] State v. Payan, 277 Neb. 663, 765 N.W.2d 192 (2009).
[5] See Neb.Rev.Stat. § 28-319 (Reissue 2004).
[6] State v. Gales, 269 Neb. 443, 694 N.W.2d 124 (2005); State v. Diaz, 266 Neb. 966, 670 N.W.2d 794 (2003).
[7] State v. Worm, 268 Neb. 74, 680 N.W.2d 151 (2004).
[8] Id.
[9] 2006 Neb. Laws, L.B. 1199, § 89.
[10] See Neb. Const. art. III, § 27.
[11] State v. Payan, supra note 4.
[12] State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007); State v. Mata, 266 Neb. 668, 668 N.W.2d 448 (2003), abrogated on other grounds, State v. Rogers, 277 Neb. 37, 760 N.W.2d 35 (2009).
[13] State v. Kuhl, 276 Neb. 497, 755 N.W.2d 389 (2008); State v. Mata, supra note 12.
[14] State v. Sepulveda, 278 Neb. 972, 775 N.W.2d 40 (2009); State v. Archie, supra note 12.
[15] State v. Mata, supra note 12.
[16] Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[17] State v. Thomas, 262 Neb. 985, 637 N.W.2d 632 (2002); State v. Nelson, 262 Neb. 896, 636 N.W.2d 620 (2001).
[18] State v. Hansen, 259 Neb. 764, 612 N.W.2d 477 (2000).
[19] See State v. Mata, supra note 12.
[20] State v. Payan, supra note 4.
[21] § 83-174.03(1).
[22] State v. Schreiner, 276 Neb. 393, 754 N.W.2d 742 (2008).
[23] State v. Simnick, supra note 3, 17 Neb.App. at 787, 771 N.W.2d at 213.
[24] See § 29-4005(2).
[25] State v. Worm, supra note 7, 268 Neb. at 80, 680 N.W.2d at 158.
[26] Incontro v. Jacobs, 277 Neb. 275, 761 N.W.2d 551 (2009).
[27] State v. Payan, supra note 4.
[28] Brief for appellee at 20.
[29] State v. Cowles, 757 N.W.2d 614 (Iowa 2008).
[30] Id. at 615.
[31] Id. at 617.
[32] Id.
[33] U.S. v. Calabrese, 825 F.2d 1342 (9th Cir. 1987).
[34] United States v. Todd, 735 F.2d 146 (5th Cir. 1984).
[35] U.S. v. Marcus, 538 F.3d 97 (2d Cir.2008), cert. granted ___ U.S. ___, 130 S.Ct. 393, 175 L.Ed.2d 266 (2009).
[36] State v. Oliver, 230 Neb. 864, 434 N.W.2d 293 (1989), overruled on other grounds, State v. Louthan, 257 Neb. 174, 595 N.W.2d 917 (1999); Olson v. State, 160 Neb. 604, 71 N.W.2d 124 (1955).