IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

JACOB V. COTTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAVID H. JACOB, APPELLANT,

V.

ROSALYN COTTON, IN HER OFFICIAL CAPACITY, AND
THE NEBRASKA BOARD OF PAROLE, APPELLEES.

Filed February 28, 2017.    No. A-15-1037.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

David H. Jacob, pro se.

Douglas J. Peterson, Attorney General, and James D. Smith for appellees.

MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

INBODY, Judge.

## INTRODUCTION

David H. Jacob, an inmate at the Nebraska State Penitentiary, appeals the Lancaster County District Court's order dismissing his petition for declaratory judgment. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

In 1986, Jacob was convicted of three counts of second degree murder and two counts of use of a weapon to commit a felony. Jacob was sentenced to life terms for each of the second degree murder convictions and sentenced to 6 to 20 years' imprisonment for each of the two use of a weapon to commit a felony convictions, with all five sentences ordered to run consecutively. At the time of the commission of the offenses, the minimum sentence for second degree murder

was 10 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 1971); Neb. Rev. Stat. § 28-304 (Reissue 1971).

Jacob's parole eligibility date was determined to be January 17, 2015, based upon an October 2014 Nebraska Department of Correctional Services parole/release eligibility information document. However, Jacob was informed through a Nebraska Board of Parole letter dated August 14, 2014, that the Board "reviewed [Jacob's] case on Aug-07-2014 in [Jacob's] presence" and as a result of this review, the Board deferred Jacob's case for review until August 2015. The letter provided that the deferment was a result of the nature and circumstances of Jacob's offenses and indicated that "an early release would depreciate from the seriousness of [his] crime and promote disrespect for the law." Another reason for being deferred was Jacob's "continued correctional treatment, medical care, vocational training, or other training . . . [would] substantially enhance [his] capacity to lead a law-abiding life when released at a later date." In a letter dated September 8, 2014, Parole Board member Rex C. Richard informed Jacob that the Board's "recommendation was made based upon records reflecting that the current offense occurred after a lengthy drug/alcohol spree" and stated that Jacob "self-admitted to the use of marijuana, hashish, opium, mescaline, acid, speed, and cocaine."

In January 2015, Jacob filed a petition for declaratory judgment, seeking to "vindicate[] his rights (1) not to be subjected to an ex post facto law, (2) to not have his liberty interests denied without the due process of law, and (3) to prevent unconstitutional action by the Legislative or Executive branches of State government by enforcing the Constitutional separation of powers." Rosalyn Cotton, in her official capacity as Parole Board chairman, and the Parole Board filed a motion to dismiss the case. In March, the district court held a hearing on the motion to dismiss and took the matter under advisement. In October, the district court granted the motion to dismiss, determining that Jacob failed to state claims upon which relief could be granted. Jacob timely filed his appeal to this court.

## ASSIGNMENTS OF ERROR

Jacob's assignments of error, consolidated and restated, are that the district court erred in dismissing his petition because (1) the parole suitability standards in Neb. Rev. Stat. § 83-1,114 (Reissue 2014) are ex post facto violations; (2) the district court failed to find that the Parole Board's determination violated the separation of powers doctrine; (3) the district court failed to conclude that the Parole Board violated his due process rights by denying him a parole hearing and inappropriately relied on *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), to determine that current parole procedures did not violate due process.

## STANDARD OF REVIEW

A district court's grant of a motion to dismiss is reviewed de novo. *Adams v. State*, 293 Neb. 612, 879 N.W.2d 18 (2016). The constitutionality of a statute presents a question of law. *Id.* When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question. *Id.*

ANALYSIS

EX POST FACTO VIOLATION

Jacob contends the Parole Board applied a more severe minimum sentence of the statutory 20-year minimum sentence for second degree murder based on the 1995 statutes, as opposed to the 10-year minimum sentence applicable at the time of the commission of the offense, causing an ex post facto change of the parole suitability standards. Jacob also claims the district court failed to consider whether the Parole Board considered the 1995 amendments to § 28-105 substantively toward the parole review suitability under § 83-1,114.

The U.S. Const. art. I, § 10 and Neb. Const. art. I, § 16 specify that no ex post facto law may be passed. A law purporting to apply to events occurring before the law's enactment, disadvantaging a defendant by creating or enhancing penalties not in existence when the offense was committed, is an ex post facto law and will not be endorsed by the courts. *State v. Simnick*, 279 Neb. 499, 779 N.W.2d 335 (2010). The prohibition of ex post facto laws ensures an individual to have fair warning of applicable law and guards against vindictive legislative action. *Shepard v. Houston*, 289 Neb. 399, 855 N.W.2d 559 (2014).

The transcript from the district court proceedings indicate that the Parole Board reviewed Jacob's case while in his presence on August 7, 2014, and consequently deferred his case for review until August 2015 because the nature and circumstances of his offenses "indicate[] that an early release would depreciate from the seriousness of [his] crime and promote disrespect for the law" and that his "continued correctional treatment, medical care, vocational training, or other training . . . [would] substantially enhance [his] capacity to lead a law-abiding life when released at a later date." Similarly, in relevant part, Neb. Rev. Stat. § 83-1,114(1) (Reissue 2014) provides that:

> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his or her release unless it is of the opinion that his or her release should be deferred because:
>
> . . . .
>
> (b) His or her release would depreciate the seriousness of his or her crime or promote disrespect for law;
>
> . . . .
>
> (d) His or her continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his or her capacity to lead a law-abiding life when released at a later date.

The Parole Board's reasoning for deferring the review makes no reference to the changes in § 28-105 or the minimum sentence for second degree murder. Section 83-1,114(1) specifically indicates that the Parole Board may defer, on its own opinion, an offender's release on parole. Despite the potential changes that may have occurred in § 28-105, there is no indication that the Parole Board considered those changes. Rather, it used its statutorily permitted discretion. We additionally note that there have been no statutory changes to § 83-1,114(1) since the commission of Jacob's offense other than the inclusion of "his or her" rather than "his." See § 83-1,114(1)

(Reissue 1971). As the Parole Board was within its statutory discretion to defer, we determine the district court properly found that the ex post facto clause was not implicated and Jacob did not state a claim upon which relief could be granted. Jacob's first claim is without merit.

SEPARATION OF POWERS

Jacob claims the district court erred in not finding that the Parole Board's application of § 83-1,114 "usurps the [j]udicial branch['s] power to determine the severity of a criminal offender's sentence, violating the constitutional separation of powers." Brief of appellant at 13. Jacob contends that by the Parole Board deferring or denying parole and extending the duration and increasing the severity of punishment for the offender, the judicial branch decision is "remade" without any appeal process.

The conditions clause of the Nebraska Constitution confers on the Parole Board the power to grant parole for any criminal offenses except treason and impeachment. Neb. Const. art. 4, § 13; *Adams v. State*, 293 Neb. 612, 879 N.W.2d 18 (2016). The Nebraska Supreme Court has determined that "a committed inmate must meet statutory requirements--i.e., 'conditions'--before being considered eligible for parole. But once eligible for parole, the Board alone has authority to grant parole[.]" *Adams v. State*, 293 Neb. at 619, 879 N.W.2d at 23. As mentioned above, § 83-1,114(1) delineates the reasons that the Parole Board may defer, on its own opinion, an offender's release on parole.

In this instance, the Parole Board was under its constitutional authority in deferring Jacob's release on parole. The Parole Board has the power to grant paroles, subject to conditions established by the Legislature, and the ability to defer parole on its own opinions. The authority is not granted to the judicial branch, but to the Parole Board alone. Therefore, we find Jacob's second claim to be meritless.

DUE PROCESS

Jacob argues the district court erred in finding that the current parole procedures did not violate due process when it relied on *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Jacob again contends that by deferring parole to an eligible offender under § 81-1,114(1), the minimum sentence is extended, causing constitutional consequences by increasing the duration and severity of the punishment. Jacob claims that the Parole Board's decision regarding parole suitability is arbitrary as it possesses the same evidence as the sentencing court, causing "an eligible offender [the] equivalent to another sentencing of the offender with a different result." Brief of appellant at 18.

It is long established that the granting of a parole is not a matter of right, but the exercise of discretion and a matter of grace. *Carr v. State*, 152 Neb. 248, 40 N.W.2d 677 (1950). In *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, *supra*, the United States Supreme Court determined that Nebraska's parole procedures afford the offender an opportunity to be heard and, when parole is denied, informs the offender in what respects he falls short of qualifying for parole, thereby satisfying due process requirements. Moreover, the U.S. Supreme Court determined that "[w]hen the [Parole] Board defers parole after the initial review hearing, it does so because examination of the inmate's file and the personal interview satisfies [] that the inmate

is not yet ready for conditional release." *Id.,* 442 U.S. at 14-15, 99 S. Ct. at 2107, 60 L. Ed. 2d 668. "Since the decision is one that must be made largely on the basis of the inmate's files, this procedure adequately safeguards against serious risks of error and thus satisfies due process." *Id.* at 15, 99 S. Ct. at 2108, 60 L. Ed. 2d 668.

In this instance, Jacob was provided adequate due process, as he was informed why his review was deferred. Specifically, Jacob received a letter from the Parole Board dated August 14, 2014, informing him that based upon the August 7, 2014, review of his case while in his presence, his case would be deferred for review by the Parole Board until August 2015. The letter specifically stated that the deferment was a result of the nature and circumstances of Jacob's offenses "indicat[ing] that an early release would depreciate from the seriousness of [his] crime and promote disrespect for the law" and that his "continued correctional treatment, medical care, vocational training, or other training . . . [would] substantially enhance [his] capacity to lead a law-abiding life when released at a later date." Therefore, we determine that Jacob was not denied due process and find his third claim to be without merit.

## CONCLUSION

Having found that the parole suitability standards are not ex post facto violations, that the Parole Board did not violate the separation of powers doctrine, and that the Parole Board did not violate Jacob's due process rights, we affirm the decision of the district court dismissing Jacob's complaint.

AFFIRMED.